## FORAN v. McLAUGHLIN, Internal Revenue Collector.

### No. 6705.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1932.

Rehearing Denied June 24, 1932.

Morgan J. Doyle and John Parks Davis, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

The appellant brought this action to recover a 10 per cent. tax exacted by the appellee upon certain payments that the appellant made to the Olympic Club, of San Francisco, during 1923. The appellee claimed that the payments to the club, amounting to $52, constituted dues, which were subject to a 10 per cent. tax of $5.20 under section 801 of the Revenue Act of 1921 (42 Stat. 291). The appellant contends that the payments in question were not dues, but, on the contrary, green fees that he paid to the club monthly at a flat monthly rate, in lieu of the daily green fees exacted for the daily use of the club's golf courses.

These green fees that were taxed had been paid by the appellant to the club in addition to his regular monthly dues of $6 as an ac-

tive resident member. The appellant contends that these monthly green fees were not incidental to membership, and therefore were not dues, but were special charges paid for the use of a special facility of the club.

The question presented, therefore, is whether these monthly "green fees" were or were not "dues" within the meaning of section 801 of the Revenue Act of 1921. Admittedly daily green fees are not taxable. Therefore the only question on this appeal is whether such "green fees," when paid monthly as fixed and recurring obligations that carried with them rigid contractual liability, lost their character as casual green fees and became "dues."

A jury having been waived by written stipulation, the action was tried by the court. William F. Humphrey, president of the Olympic Club, was the only witness called by either party. At the conclusion of the evidence, the plaintiff-appellant moved the court for judgment in his favor upon the pleadings and the evidence. Thereupon the defendant-appellee moved the court for judgment in his favor, and both parties requested special findings. The court granted the defendant-appellee's motion for judgment, and adopted the findings of fact and conclusions of law proposed by the defendant-appellee. From the order and judgment on the findings, the taxpayer appealed.

The facts of the case are in brief as follows:

In 1922, the problem of financing the purchase of the properties of the Lakeside Golf Club, a corporation owning lands in San Mateo and San Francisco counties, was presented to the board of directors of the Olympic Club. The latter club had also purchased other property and was planning to construct two eighteen-hole golf courses and to improve the clubhouse. To finance all these projects, the board of directors of the Olympic Club devised a plan whereby there would be "created" a "class to be known as 'Contributing Members,' which class will be limited to 850 Olympians." Any active, life, or nonresident member who contributed to the capital of the club the sum of $275 in cash, or $300 in monthly installments, became entitled to receive, at his option, either a class A privilege or a class B privilege, or, in the case of a nonresident contributor, he had the option of accepting a class A, B, or C privilege. Only members of the Olympic Club in good standing could acquire any of these privileges.

In 1922, at the time of the creation of the "privileges," the appellant contributed the sum of $275 in cash to the club, and became the owner of a class A privilege. Members holding this privilege were entitled to use the golf links as often as they desired, on paying, in lieu of the daily green fees, a flat "monthly green fee" in an amount to be fixed by the board of directors. Furthermore, holders of class A privileges were entitled to extend the courtesy of the golf courses to their guests, upon payment of the regular daily green fee for each time that such guest used the course. Such members were also privileged to extend the use of the golf courses to their wives, on payment of an additional contribution to capital, and payment of additional monthly green fees for the wives, who were not, however, thereby given membership in the club. The by-laws of the club limited the membership to white males. The monthly green fee for the wife was charged against her husband, who was the member of the Olympic Club.

Members of the club who did not contribute to the fund used in purchasing the country property had equal obligations, rights, and privileges as to all the property and facilities of the club, including golf courses, as compared to members who did contribute and who therefore received class A, B, or C privileges, with the following exceptions:

(1) Members holding class A privileges were obliged to pay the specified monthly green fee. The club member having such class A privilege had the "option" of paying the fees and retaining the privilege, or of disposing of it at any time, either to the club itself, or to any other member of the club in good standing. The club had a standing offer to purchase for $600 each all such golf privileges as might be offered for sale.

(2) Class A members had the "right" to extend the courtesy of the courses to their wives and guests, on payment of additional sums.

The tax that the appellant seeks to recover was collected under section 801 of the Revenue Act of 1921, which reads as follows: "That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club

or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

Counsel agree that the terms "dues" and "membership fees," as used in the statute, are "synonymous" and "convertible." Likewise, conceding that the terms "dues," "green fees," "memberships," and "privileges" were used loosely and interchangeably by members and officers of the club, counsel are in accord on the fundamental principle "that the actual, true nature and character of a right, or of a thing, is determined by its essential characteristics and not by the name by which it is called."

In other words, because of the inapt language used by officers of the Olympic Club, in the instant case this court must be guided chiefly, not by what was *said*, but by what was *done*. Nevertheless, in construing an alleged membership of a club, human language cannot be altogether disregarded. Infelicity in its use merely complicates the task.

An example of such infelicity of expression as to an important element is found in the circular letter sent out by the Olympic Club to its various members, under date of June 12, 1922. On one page of the record we find the statement: "To finance the purchase of the property, the construction of the two golf courses and improvements to the club house, it is planned to *create a class to be known as, 'Contributing Members,'* which class will be limited to 850 Olympians."

But on the next page we read: "By the proposed plan there is no initiation fee, *as no new membership is created,* but every contributor will have the right to sell the rights acquired by his contribution to an Olympian and retain half the proceeds of the sale."

We have italicized the seemingly contradictory passages.

At the threshold of our inquiry, it is necessary to ascertain the meaning of the terms "dues" and "membership fees" as used in the statute.

In Whitman v. Oxford National Bank, 176 U. S. 559, 562, 20 S. Ct. 477, 478, 44 L. Ed. 587, the court said: "The word 'dues' is one of general significance, and includes all contractual obligations."

Citing the Whitman Case, supra, the Circuit Court of Appeals for the First Circuit, in Ward v. Joslin, 105 F. 224, 227, continued: "We refer, also, to Bouv. Law Dict. 'Due,' showing that the word may signify 'what ought to be paid,—what may be demanded'; and to Judge Story's observation in Carver v. Manufacturing Co., 2 Story, 432, 449, Fed. Cas. No. 2,485, on the words 'debts' and 'dues,' that 'dues' is broader than 'debts.' "

The appellant quotes in its entirety the decision in Weld v. Nichols, Collector (D. C. Mass.) 9 F. (2d) 977, 978. That case involved an "additional fee" of $7.50 for the privilege of playing golf for six months, on which fee a tax of 75 cents was assessed. The report of the case does not disclose whether the club member holding the golf privilege was or was not compelled to pay the "additional fee" for another six months at the close of the first six-month period. It is not shown whether the member would have been absolved from paying the six-month fee in case he had decided he did not desire to play golf during the ensuing semester. In other words, the printed record of the Weld Case, supra, is silent as to whether or not the member's obligation to pay the fee was a fixed and *recurring* one, and one that carried with it contractual liability. As will be seen presently, the appellant's obligation was of this latter kind.

But even in the Weld Case, we find the following significant language: "Presumably the same expression is used in the same sense throughout the section. If so, the words 'dues or membership fees,' in clause (a), were meant to cover only fixed and definite charges applicable to all members of *each particular class of membership.* This seems to me to be the underlying intention of the section." (Italics our own.)

In Thompson v. Wyandanch Club, 70 Misc. Rep. 299, 127 N. Y. S. 195, 200, the court said: "With reference to clubs and other membership corporations the meaning of the word 'dues' is settled. It means the obligation into which the members enter to pay a sum to be fixed, usually by by-laws, at recurring intervals, for the maintenance of the organization."

Reverting to the Supreme Court's definition of "dues" as including "all contractual obligations," we may examine the record in the instant case, in the effort to ascertain whether the appellant's obligation to pay the alleged "dues" for his class A privilege or membership was in fact and in law contractual.

We do not desire to burden this opinion with copious citations from the record tending to show the rigor with which the appellant's fellow members were being held to their obligation to pay monthly green fees. A few instances, however, will be quoted as typical, from the minutes of the golf committee:

"Letter dated January 24th from Paul T. Carroll, Class 'A' member, wherein he advises that he and his wife are planning to leave this city and will be absent for approximately six months and for this reason request a leave of absence from the Olympic Country Club covering that period; it was the sense of the meeting that, under the present ruling, i. e., that members of Class 'A' must continue therein for a period of at least one year, Mr. Carroll's request be denied."

"Letter dated January 15th, from D. D. Madden, Class 'A' member of the Olympic Country Club, wherein he asks that his wife, Mrs. D. D. Madden, be withdrawn from the monthly green fee, but [?] inasmuch as she has only played golf twice during the past year; it was the sense of the meeting that, under the present ruling, i. e., that members of the Women's Golf Annex must continue therein for a period of at least one year, Mr. Madden's request be denied."

"Note from Dr. Hartland Law asking that his monthly green fee of $4.00 be discontinued; it was the sense of the meeting that his request be denied for the reason that compliance therewith would be contrary to the rules now and heretofore in effect at the Olympic Club, i. e., that members of Class 'A' must continue therein for at least one year."

The foregoing excerpts from the minutes clearly indicate that, by whatever name these class A memberships were called, they entailed upon their holders a fixed contractual liability to pay monthly green fees, regardless of their desire to continue to use the greens. Assuredly, then, these so-called "fees" were not for a single, casual, and occasional privilege—like a chance meal at the country club dining room—but represented a *recurring contractual* obligation, extending over an indefinite period of time, and, in the language of the Weld Case, supra, "incidental" to a "particular class of membership." We therefore believe that these "fees" were properly taxed.

Judgment affirmed.