## GARDEN CITY GOLF CLUB v. CORWIN.
### No. 92.

Circuit Court of Appeals, Second Circuit. Dec. 19, 1932.

Greene & Hurd, of New York City (Chase Mellen, George L. Hubbell, Jr., and James L. Dohr, all of New York City, of counsel), for appellant.

Howard W. Ameli, U. S. Atty., Herbert H. Kellogg, and Albert D. Smith, Asst. U. S. Attys., all of Brooklyn, N. Y. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, Dale H. Flagg, Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellant is a membership corporation, organized under the New York Membership Corporations Law (Consol. Laws, c. 35), and maintains a golf club. At the times herein mentioned, the membership exceeded 350 persons, some of whom were life members. There were other membership classifications. The control and management of the club's property is in a board of governors, who make and amend the by-laws and rules of the club consistent with its constitution, regulate the use of the clubhouse, grounds, and appurtenances, and also transact the business of the club. The treasurer collected all sums due to the club and kept control of its funds, making distribution only under the direction of the board of governors. After due consideration, the board of governors decided upon improvements to the clubhouse and grounds involving an expenditure of $52,500. To cover the expense of these improvements, it was determined to invite members to submit to an assessment of $150 each. The board invited the co-operation of the members to pay this sum by a letter sent to each member. The official action of the board of governors adopted a recommendation of the president "that a permissive assessment on the membership be requested, at the rate of $150 for each member, or a general meeting be called to increase the dues to meet this past and prospective necessary expenditure." Under date of March 20, 1930, the president addressed a letter to the members explaining the situation and inclosing a blank for a subscription to the assessment which stated in part: "As a * * * member of the Garden City Golf Club, I accept the assessment of $150 for the purposes stated in the President's letter of March 20, 1930." Thereafter all but 15 regular members and the honorary members signed and returned the blank form; the great majority agreeing to pay $150 each. However, some paid $100 and others $50 each; several did not return the blanks nor did they pay.

On April 3, 1930, sixteen new members were elected and were required to pay $150 each as a qualification for membership. On January 27, 1931, the board resolved to reinstate a former member on payment of all arrears of dues, other charges, and the $150 assessment. The member paid these sums, and was reinstated.

The members, exclusive of the newly elected sixteen who paid $2,400 and the one member who paid $150 on reinstatement, paid in all $52,750. The total sum of $55,300 was kept in a special account and devoted to the special purposes for which it was collected. The constitution and by-laws do not provide for an assessment of the members. No disciplinary action has been taken against any member for nonpayment of the assessment. On this sum of $55,300 the club paid, under protest, the 10 per cent. tax set forth in section 413 of the Revenue Act of 1928. The court below held that $52,750 was properly taxed as an assessment and that $2,550 was properly taxed as initiation fees.

Section 501 (d) of the Revenue Act of 1926, as amended by section 413 (a), of the Revenue Act of 1928 (26 USCA § 872 (d), provides that "As used in this section, the term 'dues' includes any assessment irrespective of the purpose for which made; and the term 'initiation fees', includes any payment, contribution, or loan required as a condition precedent to membership. * * * "

██ We think that the court below properly held that, as to the sixteen newly elected members and the reinstated member, the $150 imposed was an initiation fee and subject to the tax. This sum was required as a payment or condition precedent to membership.

██ In taxation, the term "assessment" usually refers to one of several subjects in the process of obtaining revenue by taxation. New York ex rel. Williams v. Weaver, 100 U. S. 539, 545, 25 L. Ed. 705; Cooley, Taxation, (4th Ed. 1924) § 1044. Under the Revenue Acts, assessment is distinguished from collection, another step in the process of taxation. United States v. Ayer, 12 F.(2d) 194 (C. C. A. 1); United States v. Cruikshank (D. C.) 48 F.(2d) 352. But it may not be said that every sum of money paid by a member to his club is taxable as dues. Foran v. McLaughlin, 59 F.(2d) 158 (C. C. A. 9); Weld v. Nichols (D. C.) 9 F.(2d) 977. It is clear that Congress did not intend to tax every contribution of a member to a club as an assessment. Voluntary or casual payments by individual members for special services are not taxable.

Foran v. McLaughlin, supra. Equally, casual contributions in the way of gifts by the individual members could not be taxed as assessments. The fact that the gifts are by many members and, for the most part, of the same amount, does not change their voluntary and casual character or render them taxable as assessments.

██ Unless the legislative intent is clear, gifts are not taxable as assessments. The purpose of the amended section, preventing the evasion of collecting dues under the guise of assessments, necessarily refers to lawful assessments. By this Congress means that obligatory payments like dues and lawful assessments are to be taxed. But invited assessments or contributions, the collection of which the club has no legal right to pursue, are not assessments within the act. The title of section 413 of the Revenue Act of 1928 (45 Stat. 864) refers to "Club Dues Tax," which, together with the Senate and House reports on the provision as amended, gives force to the argument that by the use of the word "assessment" the amended section was intended to include all payments made in place of dues; that is, all obligatory payments.

██ These contributions made by members did not constitute an assessment in the statutory sense of an obligatory payment. There was no legal right in the appellant to require payment of such as an assessment. Thompson v. Wyandanch Club, 70 Misc. 299, 127 N. Y. S. 195. Moreover, the recommendation of the president "that a permissive assessment on the membership be requested" was adopted by the board of governors at its meeting on January 3, 1930, on a motion that "assent [be] requested to an assessment." The letter of March 20, 1930, was written in pursuance of a direction of the board "to ask members to submit to an assessment"; that is, an acceptance of the assessment by the members. Furthermore, it appears that the club officials took no steps to force contributions under the assessment against nonpaying members which clearly shows an intent that the contributions were not obligatory and consequently not taxable as an assessment under section 413 of the Revenue Act of 1928, although the term "assessment" was used when a more appropriate term "contribution" might have been used. We think it is not an assessment within the statutory intendment of that word. The appellant was entitled to recover the tax paid less $255, which was lawfully collected for the initiation fees charged the seventeen members referred to above.

Judgment reversed.