**HARDT v. McLAUGHLIN, Collector of Internal Revenue.**

No. 16376.

District Court, E. D. Pennsylvania.
Jan. 14, 1936.

John Lewis Evans, of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Donald J. Marran, Sp. Asst. to the Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This suit was brought to recover the ,um of $5.50, paid by the plaintiff as club dues tax for the calendar year 1931. The Revenue Act of 1928, § 413(a) (1) and (d), 26 U.S.C.A. §§ 950(a) (1), 952, applies. The trial was to the court without a jury. A stipulation of facts was entered into, which is adopted by the court as special findings of fact. In addition testimony was taken from which additional facts will be found.

The question involved is whether annual charges paid by members of the Merion Cricket Club to the Club for the privilege of playing golf on the club course are "dues" within the meaning of the Act.

There are three reported decisions dealing with the question. They are Weld v. Nichols, 9 F.2d 977, D.C.Mass., and Baltimore Country Club v. United States, 7 F. Supp. 607, D.C.Md., which held similar payments not taxable, and Foran v. McLaughlin, 9 Cir., 59 F.2d 158, which held them taxable. The intricacies of club organizations and the variety of membership distinctions will naturally lead to differing results in applying a general rule to particular cases. But I do not think that these decisions disclose any real difference of judicial opinion as to the rule which governs and the test to be applied.

We start with the proposition that membership in any club involves certain basic payments (usually annual) which, at the least, gives rights of ownership in the club property and in the government of the organization. In addition, most clubs provide various facilities and services, which some members will want to use and which others will not. Those who do almost always have to pay something for them in addition to their regular club dues. The rights thus obtained vary widely in kind and degree, ranging from those which involve practically nothing beyond the services of an attendant furnished by the club, such as having a car washed in the club garage or use of the club barber shop, to those which carry the privilege of using substantial portions of the club property, often representing a large permanent investment and rather definitely set apart and segregated as to upkeep and management, for example, a golf course with a separate golf club house where meals are served and bedrooms are to be had. Intermediate between these two extremes are a great variety of privileges not easy to classify and not necessary to consider in this case, involving the use of parts of the club equipment adapted to particular games or activities, such as the billiard tables, swimming pools, cards and card tables, squash courts, tennis courts and skating pond.

Of course charges of fifty cents or a dollar for car washing or a pack of cards or the use of a billiard table are not club dues in any sense of the word. The plaintiff argues that there is no substantial distinction between such payments and the yearly charge for golf privileges, involved in this suit. We turn to the cases for the guide.

Judge Morton in Weld v. Nichols, the first of the three cases referred to above, proposed a test which he derived from reading clause (a) in connection with the last sentence of clause (b) which I think is entirely sound and satisfactory. He says the words " 'dues or membership fees,' in clause (a), were meant to cover only fixed and definite charges applicable to all members of each particular class of membership."

The Baltimore Country Club Case expressly approved and adopted this test. I do not think that either what was decided or what was said in the opinion in Foran v. McLaughlin was in conflict with this. That opinion approaches the question from a

slightly different angle and stresses the "recurring contractual" nature of the obligation but it really comes down to the same thing. When a club member, in order to exercise certain privileges and use certain club facilities in connection with them, assumes a binding obligation to pay a fixed definite charge, which obligation extends over a considerable period of time and will be automatically renewed until he withdraws from his preferred position as a user of the privileges in question (a "recurring contractual obligation") he really has become one of a particular class of club members. That is, if we look at the substance of the thing and not at the terminology used in the by-laws, resolutions, notices and the like, and I think that everyone will agree that the form should not control the actuality.

In the case at hand it is true that the by-laws divide the Merion Club membership into nine classes, and that golf-playing members are not mentioned in the classification as distinct from any other class, but I cannot see any reason why members who have acquired the right to play golf on the club links—a right which club members do not have by virtue of their membership—by paying a regular additional annual assessment are not just as much a class of members as those, say, who by paying more than the minimum regular dues get the right to have admission cards issued to the ladies of their immediate families which entitle the ladies to all the privileges of the grounds and the main club house ("family members" in the classification made by the by-laws.)

There is no question about the binding nature of the obligation assumed when a member applies for and is granted a golfing status. If this occurs before January 1st he is obligated to pay $110 in two installments on the first of January and the first of July. If he plays six months and wishes to give up golf on the first of July he cannot avoid liability for the second installment unless there happens to be a waiting list for golf privileges and the Club chooses to relieve him and accept someone else in his place. Unless he notifies the Club before December 31st he will be automatically liable for another year's golf fees. This is exactly the same provision as applies to the regular membership dues, and resignations from the Club itself must be presented before December 31st or else another year's liability will be incurred.

If he fails to pay the golf fees and continues in such default after being duly posted he loses not only the right to play golf but membership in the Club, because the by-laws provide that "in case of nonpayment * * * such persons shall be subject to the same penalties as provided for the non-payment of dues."

Only a limited number of members may be admitted to yearly golf privileges and a regular waiting list is maintained for excess applications. As I understand the testimony, though it is not very clear and may not be of great importance, the rule has been that if the golfing quota was not full, club members generally were permitted to use the course only four times a year upon paying a daily greens fee, the only difference between them and non-members being that the latter had to be introduced as a guest of a member. When the quota was full and there was a waiting list, club members were allowed to play as often as they pleased at the daily rate.

The plaintiff agrees that the test laid down by Judge Morton and stated above is the correct rule. His argument that it does not apply to him comes down in effect to the point that there is no class of golfing members eo nomine. If the form is to control he is right. If the substance, I think he is wrong.

I find as a fact that the plaintiff's payment of $5.50 which is the subject of this suit was a charge applicable to a particular class of members.

The plaintiff's request for conclusions of law are denied. The defendant's requests for conclusions of law are all affirmed.

I find a verdict for the defendant and judgment may be entered thereon.