## FRESH MEADOW COUNTRY CLUB, Inc., v. UNITED STATES.

### No. 6144.

District Court, E. D. New York.

Dec. 4, 1936.

Baar, Bennett & Fullen, of New York City (Emil N. Baar and John P. Hurley, both of New York City, of counsel), for plaintiff.

Leo J. Hickey, U. S. Atty., and John G. Dalton, Asst. U. S. Atty., both of Brooklyn, N. Y., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Francis I. Howley, Sp. Assts. to the Atty. Gen.

GALSTON, District Judge.

The plaintiff, a corporation organized under the membership law of the state of New York, sets forth in its complaint that in February, 1929, Walter E. Corwin, then collector of internal revenue for the First collection district of New York, acting under section 501(a) of the Revenue Act of 1926 (26 U.S.C.A. § 950 note) demanded that the plaintiff pay over to him a tax at the rate of 10 per cent. upon the money paid by the members in response to a request for contribution made by the finance committee of the club. To avoid distraint, but under protest, the plaintiff on March 6, 1929, paid the collector the sum of $2,925, representing 10 per cent. of the amount thus contributed. This action brought by the plaintiff is based on a claim for a refund of that sum and for the refund of $10 paid in the nature of an offer of compromise for any accrued penalty.

It is alleged by way of defense that the sums paid by the members were not voluntary contributions but an assessment.

The Revenue Act of 1926, c. 27, 44 Stat. 92, § 501, provides: "Sec. 501. On and after the date this title takes effect there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 501 of the Revenue Act of 1924, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

On March 31, 1927, at a regular meeting of the board of governors of the club, the following resolution was adopted: "On motion of Mr. Julius J. Kauder, member of the Finance Committee, it was unanimously resolved, that the Finance Committee be authorized to request each member to make a voluntary contribution of the sum of $100.00 payable in two instalments of $50.00 each on May 1st and September 1st, with the understanding that if any member declined to make said contribution, no charge be made against him therefor."

The minutes of a special meeting held on April 11, 1927, record that:

"Mr. Latner reported in behalf of the Finance Committee as follows:—They had

given careful consideration to the question of raising additional funds in accordance with the resolution adopted at the last regular meeting of the Board, namely on the basis of $100. from each regular member, and in cooperation with the president had procured from Mr. Idle a statement of our position as of April 10th, 1927, from which it appeared that if approximately fifteen additional members would be elected during 1927, and the $100. was paid by each member, and the budget as prepared by the Finance Committee is adhered to, the club's cash position at the end of the year would be that it would owe about $37,000.00 including the bank loans. He recommended in behalf of the Finance Committee that the resolution adopted as aforesaid be continued, and that it is the sense of this Board that no certificates of indebtedness be issued.

"On motion duly made, seconded and carried, the recommendation of the Finance Committee was accepted, and it was

"Resolved that each regular member of the club be requested to contribute $100. to reduce our deficit, and that this amount be payable in two instalments of $50. each on May 1st and August 1st, and that Mr. Latner and the president be authorized to prepare a letter to the members in connection therewith, it being understood that if any member declined to make said contribution, the amount thereof was not to be charged against him."

Thereafter, and pursuant to these resolutions, the finance committee addressed a similar letter to the membership, wherein it is said:

"It is therefore our recommendation that each member of the Club be requested to contribute voluntarily the sum of $100.00, payable in two installments of $50.00 on May 1st, 1927, and August 1st, 1927.

"This recommendation has received the approval of the Board of Governors, and as stated above, has also received the approval of a great majority of our members. The charge for the first installment will therefore be included on the May 1st bills."

Two hundred eighty-nine regular members thereafter contributed the sum of $28,900; three regular members voluntarily contributed the sum of $50 each; one courtesy member contributed $100; fourteen regular members admitted to membership subsequent to the mailing of the letter of April 14, 1927, contributed $1,400; two regular members contributed nothing; four courtesy members contributed nothing; and one clerical member contributed nothing.

The minutes disclose that at a meeting held on May 29, 1927, it having appeared that some members had not contributed to the fund, it was resolved that an effort be made to induce them to contribute, but that, if they declined so to do, their account should be credited by eliminating the charge for the contribution.

It is significant as bearing upon the power of the board of governors that it was not until November 26, 1928, that it was sought by amendment of the by-laws to empower the board of governors to levy assessments.

It seems entirely clear that the board of governors of the club had no power at the time in question under its by-laws to make, levy, or collect any assessment for any purpose.

In Thompson v. Wyandanch Club, 70 Misc. 299, 127 N.Y.S. 195, 199, the right to impose assessments was considered. Mr. Justice Blackmar wrote: "If that power is not found in the charter of the club, it does not exist. The charter is the whole body of the general laws of the state applicable to corporations of this character. I have searched the laws in vain for an authority to levy assessments under that name. * * * Unless a power to impose fees and dues includes power to levy assessments, such power does not exist. The term 'assessment' always carries with it the idea of a burden imposed in invitum, and a single act as distinguished from recurring acts. Every man experienced in business recognizes the meaning of 'assessment' as distinguished from 'fees' or 'dues.' * * * With reference to clubs and other membership corporations the meaning of the word 'dues' is settled. It means the obligation into which the members enter to pay a sum to be fixed, usually by by-laws, at recurring intervals, for the maintenance of the organization." See, also, Weld v. Nichols, Collector (D.C.) 9 F.(2d) 977.

I think it plain beyond all question that the members were under no compulsion to make the payment of $100. They did this voluntarily. The result was that

402

each member in so doing made a gift to the club. Garden City Golf Club v. Walter E. Corwin (C.C.A.) 62 F.(2d) 246, is controlling.

The plaintiff may have judgment in the usual form for the amount unlawfully collected, together with interest from March 6, 1929.