## PHILADELPHIA CRICKET CLUB v. UNITED STATES.

### No. 20474.

District Court, E. D. Pennsylvania.

March 17, 1939.

George V. Strong, of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and J. Cullen Ganey, U. S. Atty., both of Philadelphia, Pa., and Donald J. Marran, Sp. Asst. to Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover the sum of $6,797.54, paid by the Philadelphia Cricket Club, the plaintiff, as club dues taxes during the years 1932 to 1935, inclusive. The taxes were assessed upon golf fees paid by certain members upon an annual basis and in addition to the regular dues, and the question involved is whether these annual charges for the privilege of playing golf on the club course are "dues" within the meaning of Sec. 413(a) of the Revenue Act of 1928, 26 U.S.C.A. §§ 950-952.

In Hardt v. McLaughlin, D.C., 25 F. Supp. 684, decided January 14, 1936, I had occasion to examine the status of annual golf fees as club dues, and the opinion in that case may be referred to for a statement of the general rules applicable. The only case reported since that decision which has been called to my attention is Williamson v. United States, D.C., 12 F. Supp. 26. There is nothing in the opinion in that case in the least inconsistent with the basis upon which Hardt v. McLaughlin was decided.

Neither in Hardt v. McLaughlin (which involved the Merion Cricket Club) nor in the present case were the annual golf fees in form club dues—that is, they were not recognized or denominated as such by either club in their by-laws, minutes, notices, bills or statements. However, in the former case, it was decided that they were dues in fact and substance. Almost all the incidents on which the finding in Hardt v. McLaughlin was based are wanting in the present case.

In the first place, at Merion, the general membership of the club did not, by virtue of their club membership, have the privilege of playing golf on the club course otherwise than by payment of daily green fees. In this respect, they were practically on a par with strangers, except that they did not have to be introduced by golf-playing members. At the Philadelphia Cricket Club any member of the club

may pay the annual golf fees and have the full use of either or both of its courses during the current year. There was one exception to this rule which existed during the first two or three of the taxable years in question. Active members who wished to use the new or Flourtown course upon an annual basis were required to buy what was known as a "golf certificate," the price of which was $250 and the purpose of which was to provide funds for the purchase and upkeep of the new course. These golf certificates will be considered later, but it may be said now that they do not in my judgment affect the point in question here.

Second, at Merion, the obligation to pay annual golf charges was binding for the full year for which it was undertaken. It was also recurring, that is unless, before the end of the year, the club was notified that the member did not want the privileges for the following year, he would be deemed to have assumed a binding obligation to pay for them. He might be excused from this upon certain conditions, but that was a mere matter of accommodation. At the Philadelphia Cricket Club the obligation was binding for six months. That is, if assumed for a year, it could be reduced to six months upon notice. It was not recurring. After the expiration of a year the member, even though he had given no notice to the club, was not considered to have assumed an obligation to renew his golf privileges, unless he actually played golf without paying the daily green fee.

Third, at Merion the legal characteristics of the obligation to pay the golf charges were exactly the same as that to pay the general club dues. At the Philadelphia Cricket Club, they were quite different.

One point of similarity in the systems in force in the two clubs was that in each certain members held certificates which evidenced ownership of shares of the physical property consisting of the golf course and golf club house. In both cases the purpose of issuing these certificates was the same—to provide funds to build and maintain the golf course. At Merion however, ownership, beside giving the holder an interest in the property, very definitely placed him in a special class of members. There was a regular waiting list, and a member of the Merion Cricket Club could only become a regular annual golf playing member when a vacancy occurred by death or resignation. The result of the distinctions at Merion was to place all the non-certificate-holding members almost in the position of non-members of a club, at least so far as the golf is concerned. In the Philadelphia Cricket Club the holders of the golf certificates never had any privileges of any kind, not open on exactly the same terms, to every other member of the club. They were owners of shares in the physical property and nothing more. The only restriction involved in the entire arrangement was that for certain years active members of the Cricket Club lost a portion of their privileges (the right to play golf at the Flourtown course upon an annual basis) if they failed to buy a certificate. There were, however, no restrictions or limitations to their right to acquire the certificate, no waiting list, and no other distinctions.

The entire organization and club arrangement of the Philadelphia Cricket Club with regard to the golf are quite different from those of the Merion Club, and I am satisfied that at the former the golf charges are what they purport to be, namely, merely a commuted payment for the annual use of certain of the club facilities.

Judgment may be entered for the plaintiff, in accordance with the plaintiff's 24th request for finding of fact.