WHITE, Former Collector of Internal Revenue, et al. v. WINCHESTER COUNTRY CLUB.

No. 3583.

Circuit Court of Appeals, First Circuit.

Jan. 30, 1941.

Edward First, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Donald J. Marran, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellants.

J. Duke Smith, of Boston, Mass., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This is a consolidated appeal from judgments in aggregate amount of $9,211.25 entered for the plaintiff taxpayer in three suits in the United States District Court for the District of Massachusetts.

The question presented is whether certain payments made by members of the Winchester Country Club for so-called golf privileges and tennis privileges should be treated as "dues or membership fees" paid to a "social, athletic, or sporting club or organization" within the meaning of Section 413 of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Acts, page 441.

The cases were tried by the District Judge without a jury upon agreed statements of fact and evidence adduced at the trial.

The Winchester Country Club is conceded to be such a club as is referred to in the statute.

The by-laws of the Club, from which pertinent quotations may be found in some detail in the opinion of the District Judge reported in D.C., 30 F.Supp. 142, 145, provide that the annual dues of a member shall be $50, payment of which entitles him to "all the privileges of the Club except golf". Such a member desiring to obtain the privilege of playing golf, is enabled to do so by paying a fee, the amount of which depends upon the extent of the privilege desired. Upon payment of a fee of $50 he may have full golf privileges and play at any time during the year. For a fee of $35 he may have the privilege of playing except on certain specified days. A member is also permitted to purchase full house and tennis privileges and limited golf privileges, as well as tennis privileges only, for members of his family.

A member who has acquired for himself either full or limited golf privileges may purchase full house and tennis privileges and limited golf privileges for members of his immediate family on payment of a smaller fee.

The by-laws define the words "full privileges", as used therein, as meaning all the privileges of the Club, and the words "limited privileges" as meaning unlimited house and tennis privileges and golf privileges except on Saturday afternoons, Sunday mornings and holidays during April, May, June, September, October, and November.

The number of members of the Club is limited by the by-laws. The number having "limited privileges" is left to the determination of the board of directors which can deny the "privileges" to any person.

The practical interpretation and operation of the by-laws of the Club, which are somewhat obscure at first reading, were the subject of evidence and the District Judge found as follows:

"Members were permitted to engage privileges for either themselves or their families quite informally. The practice was merely to let the officers know in some way either in writing or orally what privileges were wanted. No action was ever taken by the Board of Directors approving or disapproving such action. Privileges were dropped in the same informal manner, and if privileges were taken or dropped in the middle of the year, suitable adjustments were made. Members were billed in March for dues and for privileges for the coming year. If no word had been received from a member as to the privileges desired, the same privileges as he had previously held were included on his bill, but he was quite at liberty to strike off such privileges as he did not want, and no attempt was made to collect for privileges thus dropped. On the other hand, by Article X of the by-laws, 'A member not resigning before the beginning of the Club year shall be liable for the dues for that year.' The Club year began January first."

The Government's position is that members who paid the required annual dues of $50; members who purchased full golf privileges; and members who purchased limited golf privileges constituted different classes of membership, and that the amounts they paid for the privileges are to be considered "dues or membership fees" and taxable as such. The taxpayer concedes that the $50 paid annually by all members of the Club are "dues or membership fees", but denies that the payments for golf and tennis privileges and such privileges extended to families of members represented such payment of fixed and definite charges applicable to all members of a particular class of membership (as it is put by the taxpayer) as would make them taxable as "dues or membership fees".

Of the total amount for which the taxpayer recovered judgment, $1,697 represents the tax upon the amounts paid for so-called "family limited privileges", which means "limited privileges" purchased by a member for his family.

The Government does not definitely claim that members who hold limited privileges for their families should be considered a separate class of membership, attorneys for the Government saying in their brief that whether members should be so regarded, "or whether the individual members of the family are considered associate members, the additional sums paid for 'family limited privileges' must be treated as dues or membership fees and not as incidental payments for use of the particular facility".

As a matter of fact there is no class of "associate members" mentioned in the by-laws which were in force during the period in question.

The District Judge found as follows:

"Upon the agreed facts and all the other evidence, I find that the plaintiff had but one class of membership with the exception

of a small class of special members, that neither possessors of golf privileges nor the holders of tennis privileges constituted a separate class of membership, that golf privileges and tennis privileges were optional with members and under the by-laws and the Club practice or policy could be acquired informally at any time, that once acquired there was no recurring obligation to take or pay for them in a succeeding year, that no formal action was required for surrendering such privileges during the year and that the fees therefor were not fixed or definite charges of any particular class of membership."

The question whether charges made by country clubs to their members for golf and similar privileges are to be classified as taxable "dues or membership fees" or nontaxable items of incidental expense, can seldom be determined by formulating a general self-applying definition of the statutory words. In many cases the line of demarkation is indistinct, and the decision turns upon the particular facts disclosed. If a payment clearly represents a fixed, recurring obligation automatically arising out of membership· and extending over an indefinite time, it would hardly be contended that such payment should not be properly classified as a due or membership fee, as those words are ordinarily used and understood. If a payment has no such features and ·is for the limited or temporary use of a particular facility of the club, it is admittedly not within that classification.

The statute carries no definition of "dues or membership fees" giving those words any special meaning. It does say that "the term 'dues' includes any assessment irrespective of the purpose for which made"; but that is not helpful here as the term "assessment" implies a demand upon a member for an additional sum of money which he is obliged to pay by the terms of his membership. The charges involved here, whatever they are called, are incurred at the option of the members.

■ That club charges, in order to be fairly classified as dues or membership fees as distinguished from casual charges, must have certain attributes, is clear. The meaning of the words as used in the statute has been the subject of discussion by several courts, first in the district of Massachusetts in 1925 (Weld v. Nichols, D.C., 9 F.2d 977), in which it was held that the words in question must refer to "definite obligations incidental to membership in the club", covering "only fixed and definite charges applicable to all members of each particular class of membership". This expression was adopted and the doctrine of the Weld case impliedly recognized by the court in Foran v. McLaughlin, 9 Cir., 59 F. 2d 158 (certiorari denied 287 U.S. 637, 53 S.Ct. 87, 77 L.Ed. 552), although, on different facts in that case, the payments were held to be dues because they represented such a fixed contractual liability.

The doctrine of the Weld case was followed in Baltimore Country Club v. United States, D.C., 7 F.Supp. 607, in which case it was held that annual golf fees exacted only from those members of the country club who desired the privilege of playing golf are not taxable as club "dues or membership fees"; and in Williamson v. United States, D.C., 12 F.Supp. 26, and Philadelphia Cricket Club v. United States, D.C., 30 F.Supp. 141.

In Hardt v. McLaughlin, D.C., 25 F. Supp. 684, 686, a case decided against the taxpayer, on somewhat different facts, the principle was enunciated that "when a club member, in order to exercise certain privileges and use certain club facilities in connection with them, assumes a binding obligation to pay a fixed, definite charge, which obligation extends over a considerable period of time and will be automatically renewed until he withdraws from his preferred position as a user of the privileges in question (a 'recurring contractual obligation') he really has become one of a particular class of club members."

In the Hardt case it appeared that the liability for golf fees was fixed in the same way as ordinary club dues, a "recurring contractual obligation". We find nothing in the instant case or in the decisions above referred to that requires us to disturb the findings of the District Judge that there was but one class of membership in the plaintiff Club,—with the exception of a small special class not involved. The temporary nature of the privileges purchased by members, the fact that such privileges, different in kind, were optional, could be taken and dropped informally at pleasure and involved no recurring obligation to make further payments, are not attributes of a class of membership; but, on the other hand, indicate a limited, temporary use of particular facilities of the club, payment for which cannot be called "dues or membership fees" in the ordinary acceptation of those terms.

In support of their contention the appellants make an argument based upon the fact that the taxpayer, under its original by-laws as they stood before they were changed in 1929, would have been liable for these taxes as dues or membership fees. There is no allegation or evidence here of any improper attempt to avoid taxation. The reasons for the change in by-laws were given fully in the evidence before the District Court. Even if one motive behind the change was a desire to reduce the tax liability, it should not prejudice the taxpayer in asserting his legal rights. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

On the record before us we conclude that the findings of the District Judge and his conclusions that the amounts paid and in question were not taxable, under the circumstances shown, were correct, and the judgment of the District Court is affirmed.

The judgments of the District Court are affirmed.