578

**MERION CRICKET CLUB v. UNITED STATES.**

**No. 7441.**

Circuit Court of Appeals, Third Circuit.

March 28, 1941.

MARIS, Circuit Judge, dissenting.

John Lewis Evans, of Philadelphia, Pa. (Bernard V. Lentz and White & Staples, all of Philadelphia, Pa., on the brief), for appellant.

Donald J. Marran, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and T. J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

Some, at least, of the "leisure activities" said to be characteristic of a club [1] seem to have been devoted to tax litigation. So we find the member-taxpayers taking a broad view of the scope of "pleasure, recreation, etc." [2] and a narrow view of the meaning of "initiation fees" and "membership dues and fees". They first whittled at initiation fees. [3] Next, they succeeded in exempting assessments. [4] Clubs responded to this by lowering dues and increasing assessments. So the device did not affect their economy, but did effect a tax saving. Congress naturally plugged both leaks. [5]

The principal case is one of a series arising out of their third move. Having failed to tip the anti-tax balance by calling dues assessments, they now wishfully call them "commuted greens fees". In other words, the general dues are still lowered but the resulting deficit is met by the creation of a "playing" membership. We may say that this second method of distributing operating costs has received the cooperation of considerable judicial hairsplitting. There are many decided cases and they may be found collected in 13 Words and Phrases, Perm. Ed., 599 and 3 Prentice-Hall Federal Tax Service, 1940, Para. 29,544, and cited and discussed in two excellent law review notes. [6]

It is clear that Congress might well have taxed any payments to clubs. Such an excise would be the simplest kind of a tax on the sale of luxuries. [7] On a principle of de minimis and probably to save accounting intricacy, it selected the larger and more easily detectable. These are: "initiation fees", "assessments", and "membership dues and fees". As the term "dues" has been long in use in this country (the corresponding word in England is "sub-

---

[1] Clubs, 3 Ency. of the Social Sciences, pp. 573-577.

[2] 26 U.S.C.A. Internal Revenue Code, § 101 (9); What is a social club within statute imposing tax on dues or membership fees, 80 A.L.R. 1296; Construction and application of provision of income tax statutes exempting clubs, 130 A.L.R. 107; Taxation of Individuals as Members of Social Clubs, 26 Virginia Law Review 941 (note), sub-heading, Social, Sporting or Athletic Club?, at p. 942.

[3] Masonic Country Club v. Holden, 6 Cir., 18 F.2d 553.

[4] Garden City Club v. Corwin, 2 Cir., 62 F.2d 246. Cf. Fresh Meadow Country Club v. United States, D.C., 17 F.Supp. 400, 401.

[5] 26 U.S.C.A. Internal Revenue Code, § 1712 (a) and § 1712 (b).

[6] Taxation—Federal Excise Tax on Club Dues or Membership Fees, 24 Minnesota Law Review 713 (note); Taxation of Individuals as Members of Social Clubs, 26 Virginia Law Review 941 (note).

[7] Green, Theory and Practice of Modern Taxation (2d Ed. 1938) 196.

scription"[8]), it might well be said to have acquired a "trade usage". So testimony on that meaning might have been offered.[9] It has not been presented either to us or, so far as we know, to any other court. We think, however, that it sufficiently appears from the "common ground" of the sociological and legal structure of social clubs. The latter has been adverted to in the text books and essays.[10]

The name itself is significant. It derives from the Anglo-Saxon "cleofan" and indicates a division of the reckoning.[11] The theory is one of joint expenditure.[12] Some clubs carry this theory to its logical conclusion and divide the entire cost of running the club among the whole membership. The glutton and toper eat and drink at the expense of their more abstemious brethren. The more athletic or enthusiastic golfer lives off his weaker or less zealous colleagues. Most clubs, however, do not carry this companionship idea to such lengths of sharing. They except and apportion to the particular recipients certain supplies and services. What remains comes from the members generally and the names and forms of their payments have always been those of "initiation fees" and "dues". It behooves us, then, to examine the basis of the difference and so to determine the distinction.

Club facilities may be for common and repeated use or they may be for single and individual enjoyment. It is possible, although difficult, and may be unjust cost accounting (i. e. per divot) to divide that common use among the users. Such a division overlooks one element. The facility must be available irrespective of use (this applies to certain categories, perishables for instance, of the individual and single). For that reason, the apportionment must be general and cannot be allotted. A golf course is just as typical as a club-house. You consume a drink and you enjoy the special attention of a caddy, but you share the use of fairways that always await anxiously for your drives.

The argument for the "commuted green fee" is then an attempt to extend a false analogy by disguised phrasing. The green fee is not an attempt to charge the appropriate fraction of a general cost. It is an arbitrary amount billed to non-members for the privilege of playing. Its character has been well described by a judge speaking in the home of golf. He says: " * * * The revenue of the committee is to consist—in addition to a fixed contribution of 6s. per member payable by the golf clubs and a similar fixed charge payable by residents who use the links for playing golf—of fees levied on visitors and members of the general public who use the links for the game." Carnoustie Golf Course Committee v. Commissioners of Inland Revenue, 1929 S.L.T. 366, 368, 369.[13] It is, in fact, more closely related to calendar than to cost.[14] Obviously nothing is added to an inaccurate description by the application of the common term for a collective payment.

The cases have attempted a further confusing refinement. They suggest some budgeting principle. It is easier to run a club, or anything else for that matter, if one can dispense with prophecy. The courts have allowed this greater ease to assist not only the managers but the taxpayer-members,

---

[8] Wise v. Perpetual Trustee Co., 1903 A.C. 139, 149; Carlisle and Silloth Golf Club v. Smith [1912] 2 K.B. 177, 189, 190, affirmed, [1913], 3 K.B. 75, 82-83.

[9] 7 Wigmore on Evidence, 3d Ed., § 1955; 9 Wigmore on Evidence, 3d Ed., § 2556.

[10] "It is well known that clubs exist which limit the number of the members and select them with great care, which own considerable property in common, and in which the furnishing of food and drink to the members for money is but one of many conveniences which the members enjoy." 4 Amer.Jur. p. 457.

See also Escott, Club Makers and Club Members.

[11] "The word signifies uniting to divide", Timbs, Clubs and Club Life in London, p. 2.

[12] Timbs, above cited, p. 4.

[13] Cf.: " * * * It is said that the green fees alone would not nearly keep up the course and the club-house which the visitors enjoy, nor would the members' subscriptions without the visitors' green fees keep up the course and the club-house; that in either of those aspects the club would every year have a heavy deficit. By combining the two there is a less deficit, though there is still a deficit, because the difference between the receipts and expenditure has to be made good by members' subscriptions." Carlisle and Silloth Golf Club v. Smith, [1912] 2 K.B. 177, 189, 190.

[14] It is common knowledge that most golf clubs scale their green fees according to the probabilities of congestion.

and have made exemption turn upon recurring certainty.[15] Such a view lacks logic. The budget would be even more assisted by life memberships or by deposits to cover the purchase of consumables. Furthermore, the club with the best crystal-gazers or the most loyal members would escape the most taxes. In point of fact, the principal case falls inside even the questioned classification.

The judgment of the District Court is affirmed.

## JONES, Circuit Judge (concurring).

I concur in the affirmance of the judgment below for the defendant. The learned trial judge, before whom the case was tried without a jury, based his action upon a ruling of the same court in Hardt v. McLaughlin, D.C., 25 F.Supp. 684, 685, where the material facts involved were precisely the facts of the instant case.

The opinion in the Hardt case correctly construed the pertinent provision of the Revenue Act[16] with respect to the tax on club "dues or membership fees" and applied the statute to a proper appraisal of the character of the payments made by the club members for golf privileges. The payments were made in discharge of a yearly obligation (payable semiannually) which recurred so long as the member chose to enjoy, by failing to renounce prior to December 31st, the golf privileges for the ensuing year and in a sum arbitrarily fixed by the club without regard to whether the privileged member used the golf facilities much, little, or not at all. The charges were dues or membership fees in the ordinary acceptation of those terms and, therefore, within the intent and meaning of the statute. In that situation, the club's by-laws and regulations, even though promulgated long before the enactment of the particular Revenue Act, are ineffectual to exclude the payments from the purview of the tax statute.

The case of White v. Winchester Country Club, 1 Cir., 117 F.2d 146, takes away nothing from the decision in the Hardt case. The opinion in the White case expressly points out (117 F.2d at page 148) that there the privileges "could be taken and dropped informally at pleasure" as distinguished from the "recurring contractual obligation" in the Hardt case, whose pertinence to the facts of the present case has already been pointed out.

## MARIS, Circuit Judge (dissenting).

I regret that I cannot concur in the conclusion reached by the court in this case. The question before us is whether annual golf fees collected by the Merion Cricket Club from those of its members who desire the privilege of playing golf on the club's courses are taxable under Section 1710 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1710, as amounts paid "as dues or membership fees to any social, athletic, or sporting club." The Merion Cricket Club is a social and athletic club. It has ten classes of membership and for each class membership dues are fixed by the by-laws. Members of all the classes, except Playing Members (who do not have golf privileges), are given the privilege of playing golf for an annual fee, payable in semi-annual instalments. The fee varies from $30 for members under 21 to $110 for male members over 21 and its amount does not depend on the class of membership to which the member belongs. The golf privilege can be terminated by notice before the end of any year. If not so terminated the member becomes liable for another year's fee. This method of charging members for the privilege of playing golf has been in effect since 1896.

The question turns upon the meaning to be given to the statutory terms "dues or membership fees." While these are words in common use and are not defined in the statute a number of federal courts have had occasion to consider them and have indicated some limits to their meaning. Thus to be club dues or membership fees it has been held that payments by club members must be based upon membership in the club and must be payable by all the members of a particular class of membership, not merely by those of the class who elect to make use of a special club facility. Weld v. Nichols, D.C., 9 F.2d 977; Baltimore Country Club v. United States, D.C., 7 F.Supp. 607; Williamson v. United States, D.C., 12 F.Supp. 26; Philadelphia

---

[15] Contrast: Winchester Country Club v. White, D.C., 30 F.Supp. 142, affirmed, 1 Cir., 117 F.2d 146; Philadelphia Cricket Club v. United States, D.C., 30 F.Supp. 141; Foran v. McLaughlin, 9 Cir., 59 F.2d 158, certiorari denied, 287 U.S. 637, 53 S.Ct. 87, 77 L.Ed. 552; Hardt v. McLaughlin, D.C., 25 F.Supp. 684.

[16] Sec. 413 of Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A., Int.Rev. Acts, page 441.

Cricket Club v. United States., D.C., 30 F.Supp. 141. Then also, they must represent a recurring, contractual obligation extending over an indefinite period of time. Foran v. McLaughlin, 9 Cir., 59 F.2d 158, certiorari denied, 287 U.S. 637, 53 S.Ct. 87, 77 L.Ed. 552.

The golf fees involved in this case do not meet these tests. They are not incident to any class of membership. On the contrary they are payable only by those members, of whatever class, who desire to make personal use of the golf facilities of the club. Nor are they indefinitely recurring obligations. While annually renewable in the absence of notice, the accrual of the obligation is entirely within the individual member's power. If he does not wish to make use of the golf facilities in the new year he may by notice to that effect divest himself of all responsibility for future golf fees. This, it seems to me, is inconsistent with the statutory concept of dues and membership fees.

In White v. Winchester Country Club, 117 F.2d 146, the Circuit Court of Appeals for the First Circuit, upon facts substantially similar to those here involved, reached the conclusion that annual payments to a country club for golf privileges were not taxable as "dues or membership fees." That conclusion is in accord, as I have indicated, with the views of all the courts which have considered the subject except the court below in the present and a prior related case. Hardt v. McLaughlin, D.C., 25 F.Supp. 684. The case of Foran v. McLaughlin, supra, upon which the government relies, is not to the contrary, for the monthly greens fees held taxable in that case were a recurring contractual obligation of those members of the Olympic Club who joined the class of Contributing Members which obligation extended over an indefinite period of time regardless of the members' desire to use the greens. They were obligations incidental to the class of membership and were, therefore, properly taxable as membership fees.

The golf fees of the Merion Cricket Club which we are considering were provided for in 1896, long before any tax on club dues was proposed. Neither tax evasion nor avoidance is involved. Being convinced that these fees are charges for the personal use of a special facility of the club and that they are not membership fees I cannot agree that the judgment holding them to be taxable as the latter should be affirmed.