## WINCHESTER COUNTRY CLUB v. WHITE, Former Collector of Internal Revenue.

## SAME v. CARNEY, Former Collector of Internal Revenue.

## SAME v. HASSETT, Former Acting Collector of Internal Revenue.

### Nos. 7319–7321.

District Court, D. Massachusetts.

Oct. 27, 1939.

J. Duke Smith, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Edward First, Sp. Assts. to Atty. Gen., for defendants.

McLELLAN, District Judge.

In each of these three cases, the Winchester Country Club, concededly a "social, athletic or sporting club or organization" within the meaning of the statute imposing a tax on "club dues or membership fees", sues as agent for and on behalf of its present and former members and the personal representatives of any deceased member. In each case, the principal question is whether payments by club members (in addition to their regular annual dues) for certain golf privileges and tennis privileges were club dues or membership fees within the meaning of Section 413(a) of the Revenue Act of 1928, 45 Stat. 864, 26 U.S.C.A. §§ 950 (a) (1–3), 951, 952, reading:

"Sec. 413. Club Dues Tax.

"(a) Section 501 of the Revenue Act of 1926 is amended to read as follows:

"'Sec. 501. (a) There shall be levied, assessed, collected, and paid a tax equivalent to 10 per centum of any amount paid—

"'(1) As dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year; or

"'(2) As initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $25 per year.

"'(b) Such taxes shall be paid by the person paying such dues or fees.

"'(c) There shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member for dues or membership fees other than assessments, but shall pay no tax upon the amount paid for life membership.

"'(d) As used in this section, the term "dues" includes any assessment irrespective of the purpose for which made; and the term "initiation fees", includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned.'"

In the first case, numbered 7319, the plaintiff seeks to recover from Thomas W. White, former Collector of Internal Revenue, that portion of payments made to him which represented taxes on payments made by club members for golf privileges and tennis privileges. The claim is for $6,846.72 paid to the defendant and interest thereon.

In the second case, numbered 7320, the plaintiff seeks to recover $2,259.73 paid to Joseph P. Carney, former Collector of Internal Revenue and interest thereon. This payment represents a 10% tax on amounts collected by the plaintiff from its members on account of golf and tennis privileges.

In the third case, numbered 7321, the plaintiff seeks to recover $104.80 paid Thomas B. Hassett, former Acting Collector, and interest thereon. This payment represents a 10% tax on amounts collected by the plaintiff from its members on account of golf privileges.

## Findings of Fact.

These cases were heard together upon agreed statements of fact here adopted as a portion of my findings of fact, and upon evidence adduced at the trial. These findings of fact, accordingly, are based in part upon the agreed facts and in part upon other evidence not inconsistent therewith.

The plaintiff at all material times was and now is a Massachusetts corporation located in the Town of Winchester. The respective defendants were Collectors of Internal Revenue for the District of Massachusetts and each in that capacity collected the taxes, as hereinafter indicated, the recovery whereof is here sought.

The Winchester Country Club, plaintiff herein, started as a small golf club, in 1902. As time went on the facilities of the Club included a club house, which had cost over $100,000 and was owned by a real estate trust of the Massachusetts type. Before they were superseded in January, 1929, the by-laws had contained provisions as to members and their election which in accordance with the defendants' request, I set forth in detail as follows:

"Article VII. Members and Their Election.

"The number of members of the Corporation shall be fixed from time to time by the Board of Directors, but shall not exceed four hundred and twenty-five having golf privileges.

"Article VIII. Initiation Fees.

"The initiation fee for members shall be ($100) and for special members ($25).

"Article IX. Dues and Assessments.

"The annual dues shall be as follows: Class A. Membership, including golf and tennis privileges, $75. Class B. Membership, including tennis but not including golf privileges, $40.

"Special Membership, $40.

"Associate Membership Dues.

"1. First Associate Membership under Class A, including golf and tennis privilges, $20. Second and Third Associate Memberships, $10 each.

"2. First Associate Membership under Class B, including golf and tennis privileges, $35 for the first, and for additional associate memberships, $15 each. For tennis privileges alone, $10 for the first associate, $5 for the second and third.

"Family Memberships.

"Family Memberships, Sections 1 and 2 of four or more persons, under Class A, $115; under Class B, $100. Under Class B, with tennis privileges only $60."

In 1929, some of the members interested in the town, belonged to the Club because they wanted to help it, though they played no golf. Others had no interest in golf or tennis, but joined for the sake of their children and took out a full membership plus privileges for their families. In 1929 there were 425 members in full standing and as many as 100 more who wanted to play golf but could not be taken into membership. And to the latter limited privileges of using the golf course except at certain times were extended and for these privileges they paid. As Mr. John Abbott, a witness called by the plaintiff, testified in substance, and as I find:

"One outgrowth of that situation was that—for example, taking people who had special golf privileges and were not members of the Club. If we had an assessment —and I might parenthetically state we did because we tried to run the Club altogether within our income—we were not trying to make money, we were trying to reduce our indebtedness, and these 100 or 125 men who came from Arlington or Winchester were not subject to the assessment.

"That did not seem quite right. We felt that we ought to have a membership which might be unlimited; that the privileges, those who took its privileges should be limited to the capacity, whether it be golf or hockey or curling or anything else; and we conceived the idea, which I think was not new then, but had been growing in the minds of us who were responsible for the finances, that the logical, the proper thing to do with a club which had developed a value to the member as a member was that it should have membership dues or admission to be paid; that those who had, who wished any particular privileges such as those I have referred to—the privilege of golf, or, in the case of children, privileges of skating and winter sports, tennis, golf, many of them—that they should pay for what they got. That would leave the people or the men I have spoken of who had been supporting the Club because they were citizens and believed it to be a good thing for the town but had no interest in it, in any of its activities—leave them members of our Club—leaving them subject to assessments, that is true, if we overrun our

income, but not compelling him to pay for something that he did not get.

"Now there was another angle, another consideration which was of force in trying to run the finances of this Club. The Club itself, the Club property itself is owned by what we know as an ordinary Massachusetts real estate trust. The Club does not own it. The trust issued a mortgage on the property for all it could borrow, and the equity in the land is owned by the trustees, that interest being represented by trust certificates of $100 each, and those certificates are outstanding in the hands of purchasers. It was the desire of the Club and the original plan, although nothing worked out in 1929 just as we planned it, that those certificates should be owned only by club members, and the further ambitious idea that ownership should be spread evenly over the Club. Well, of course the younger men could not afford to buy them, the older men were willing to take them, so that spreading out evenly idea did not work.

"These 100 to 125 men who had the limited privileges of playing golf in our Club had none of the obligations of the members. They had no obligation on an assessment that I referred to; they were under no obligation whatever to buy these certificates because it was not a written rule of the Club, there was not in the by-laws nor in our constitution any requirement that a member should own certificates, but it was an unwritten gentleman's understanding that if they could afford to they would. And these outside fellows who had no Club membership, when it came to—they said, 'we don't care to own certificates in a Club that we are not members of'; and we felt that if those men could be brought in as members with the obligations of a member, it would help us in our financing. We felt, too, that the opening up of the membership as a membership with unlimited members would increase our income and increase the assets of the Club.

"Now those were the primary, fundamental reasons for this change, and they had been under consideration, as I remember it for some time or some plan to work out an equitable situation. Mr. Barton and I went over the whole matter and decided that $50 for full golf privileges was a fair arrangement. We thought the amount of money that was invested in the buildings which are the reasons for a general club membership on the one hand, and the money invested in the land and the improvement of the course on the other hand, were not far from each other. That is, I think it was practically fifty-fifty."

With these considerations in mind, the plaintiff enacted new by-laws such as appear in the agreed statements of facts. They went into effect in January, 1929, and, save for an increase in the authorized number of members having full privileges from 425 to 475, remained in effect as late as the institution of these suits. Pertinent excerpts from these by-laws follow:

"Article VII. Members and Their Election.

"The number of members of the Corporation shall be fixed from time to time by the Board of Directors, but shall not exceed four hundred and twenty-five (later 475) having full privileges. * * *

"Article VIII. Initiation Fees.

"The initiation fee for members shall be $100 and for special members $25.

"Article IX. Dues, Privileges and Fees.

"The annual dues of a member shall be $50. A member shall have all the privileges of the Club except golf.

| Privileges | Fees One Year |
|---|---|
| Full Privileges | $50 |
| Limited Privileges | 35 |
| Family Privileges: | |
| 1. Tennis | |
|     One Person | 10 |
|     Two Persons | 15 |
|     Three Persons | 20 |
|     Four or more Persons | 25 |
| 2. Limited Privileges | |
|     One Person | 20 |
|     Two Persons | 30 |
|     Three Persons | 40 |
|     Four or more Persons | 50 |
| 3. Full Privileges for sons between 21 and 25 years of age | 50 |

"Full privileges means all the privileges of the Club. A member may have full privileges on payment of the dues and prescribed fee.

"Limited privileges means unlimited house and tennis privileges and golf privileges except on Saturday afternoons, Sunday mornings and holidays during April, May, June, September, October, and November. A member may have limited privileges on payment of the dues and prescribed fee. The number having limited privileges

shall be determined by the Board of Directors.

"A member may have for one or more of his immediate family tennis privileges by payment of the dues and prescribed fee.

"A member who himself has either full privileges or limited privileges may have for one or more of his immediate family limited privileges by payment of the dues and prescribed fee.

"A member who has neither full nor limited privileges may have for one or more of his immediate family limited privileges upon payment of Thirty ($30) Dollars in addition to the dues and prescribed fee.

"Immediate family means the mother, wife, children, brother, or sister of a member who resides with such member, but not including a married son or daughter nor a man over twenty-five years of age.

"A lady not eligible to family privileges may become a special member of the Club with limited privileges upon election by the Board of Directors, but shall have no interest in the property of the Club. Her annual dues shall be $50. A special member may not have family privileges for others.

"Dues and fees shall be payable on March 1st of each year, provided that payment of one-half of the dues and fees may be deferred until July 1st. A member whose dues and fees or either of them, remain unpaid sixty (60) days after they are payable, shall be posted in the Club House; and if payment be not made within thirty (30) days thereafter, the member may at the discretion of the Board of Directors be dropped from membership.

"An extra assessment at the discretion of the Board of Directors on each member may be levied if found necessary for the interest on the mortgages or other obligations of the Corporation.

"The Board of Directors may deny the privileges to any person.

"A person having a family limited privilege who shall be elected to membership, at the discretion of the Directors, may not be required to pay an initiation fee.

"The Club year shall be from January 1st to December 31st.

"Any member elected after August 1st shall pay one-half of the annual dues and fees.

"Any member disobeying any rule of the Club may be suspended from all privileges of the Club or may be expelled from the Club by the Board of Directors.

"The names of all members failing to pay assessments and indebtedness to the Club, if in excess of $10 other than annual dues and fees, before the twentieth of the month following the date such debt is incurred, shall be posted in the Club House. If payment be not made within twenty days thereafter the credit of such member shall be stopped, and all privileges of the Club denied him; and the member may, at the discretion of the Board of Directors, be dropped from the Club list."

The defendants' position, as I understand it, is that by its classification of privileges in its by-laws the Winchester Country Club created various classes of membership. But I find in the by-laws above set forth only two classes of membership, namely members, who paid an initiation fee of $100 and annual dues of $50 and special members consisting of women not eligible to family privileges who paid an initiation fee of $25 and annual dues of $50. No controversy here exists as to the taxability of such initiation fees and membership dues. They were paid and no claim for their recovery is made.

The question in the first two cases is whether sums paid for golf and tennis privileges were subject to tax as Club "dues or membership fees" and in the third case whether sums paid for golf privileges were thus taxable. These questions depend not only upon the Club by-laws but also upon other evidence adduced at the trial, which confirms the view that persons who acquired golf privileges or tennis privileges did not constitute special classes of membership.

Members were permitted to engage privileges for either themselves or their families quite informally. The practice was merely to let the officers know in some way either in writing or orally what privileges were wanted. No action was ever taken by the Board of Directors approving or disapproving such action. Privileges were dropped in the same informal manner, and if privileges were taken or dropped in the middle of the year, suitable adjustments were made. Members were billed in March for dues and for privileges for the coming year. If no word had been received from a member as to the privileges desired, the same privileges as he had previously held were included on his bill, but he was quite at liberty to strike off such privileges as he did not want, and no attempt was made to collect for privileges thus dropped. On

the other hand, by Article X of the by-laws, "A member not resigning before the beginning of the Club year shall be liable for the dues for that year." The Club year began January first.

Women were allowed to use the course only during certain specified times. As heretofore stated, provision was also made for a special membership for women who wished to play golf, but had no male relatives eligible for membership. Such women paid an initiation fee, and annual dues of $50, but held no interest in the club property and were not allowed to vote. They were not allowed to play golf except at such times as other women were allowed on the course. It may be repeated that no question is here involved relative to amounts paid by such women.

Upon the agreed facts and all the other evidence, I find that the plaintiff had but one class of membership with the exception of a small class of special members, that neither possessors of golf privileges nor the holders of tennis privileges constituted a separate class of membership, that golf privileges and tennis privileges were optional with members and under the by-laws and the Club practice or policy could be acquired informally at any time, that once acquired there was no recurring obligation to take or pay for them in a succeeding year, that no formal action was required for surrendering such privileges during the year and that the fees therefor were not fixed or definite charges of any particular class of membership.

This completes the attempt to state the facts applicable to all the cases. As to the first case, numbered 7319, I also find:

The plaintiff during the period November 27, 1931, to July 26, 1933, inclusive, paid to the defendant the sum of $6,846.72, representing a tax of 10% on amounts collected by the plaintiff from its members on account of golf and tennis privileges.

Said amount was assessed against the plaintiff, together with the amount of $5,363.86, representing a tax of 10% on amounts collected by the plaintiff from its members on account of dues or membership fees and paid to the defendant.

On November 16, 1935, the plaintiff on behalf of and as agent for its present or former members, or the personal representatives of any deceased member, pursuant to the provisions of Article 54 of Regulations 43, duly filed with the Commissioner of Internal Revenue a claim for refund in the amount of $9,211.25. Included in said amount were payments made to Joseph P. Carney, former Collector of Internal Revenue, and to Thomas B. Hassett, former Acting Collector of Internal Revenue.

By letter, dated June 9, 1936, the Commissioner of Internal Revenue notified the plaintiff that its claim for refund was rejected in full.

This suit was brought within two years from said date, pursuant to the provisions of Sec. 3226 of the Revised Statutes, as amended.

As to the second case, numbered 7320, I also find:

The plaintiff during the period September 7, 1933, to October 23, 1934, inclusive, paid to the defendant the sum of $2,259.73, representing a tax on 10% on amounts collected by the plaintiff from its members on account of golf and tennis privileges.

Said amount was assessed against the plaintiff, together with the amount of $3,475.74, representing a tax on amounts collected by the plaintiff from its members on account of dues or membership fees and paid to the defendant.

On November 16, 1935, the plaintiff on behalf of and as agent for its present or former members, or the personal representatives of any deceased member, pursuant to the provisions of Article 54 of Regulations 43, duly filed with the Commissioner of Internal Revenue a claim for refund in the amount of $9,211.25. Included in said amount were payments made to Thomas W. White, former Collector of Internal Revenue, and to Thomas B. Hassett, former Acting Collector of Internal Revenue.

By letter, dated June 9, 1936, the Commissioner of Internal Revenue notified the plaintiff that its claim for refund was rejected in full.

This suit was brought within two years from said date, pursuant to the provisions of Sec. 3226 of the Revised Statutes, as amended, 26 U.S.C.A. §§ 1672–1673.

As to the third case, numbered 7321, I also find:

The plaintiff, during the period November 28, 1934, to January 9, 1935, inclusive, paid to the defendant the sum of $104.80, representing a tax of 10% on amounts collected by the plaintiff from its members on account of golf privileges.

Said amount was assessed against the plaintiff, together with the amount of $504.78, representing a tax of 10% on amounts

collected by the plaintiff from its members on account of dues or membership fees and paid to the defendant.

On November 16, 1935, the plaintiff on behalf of and as agent for its present or former members, or the personal representatives of any deceased member, pursuant to the provisions of Article 54 of Regulations 43, duly filed with the Commissioner of Internal Revenue a claim for refund in the amount of $9,211.25. Included in said amount were payments made to Thomas W. White, former Collector of Internal Revenue, and to Joseph P. Carney, former Collector of Internal Revenue.

By letter, dated June 9, 1936, the Commissioner of Internal Revenue notified the plaintiff that its claim for refund was rejected in full.

This suit was brought within two years from said date, pursuant to the provisions of Sec. 3226 of the Revised Statutes, as amended.

### Conclusions.

The problem here presented is discussed in six cases to which my attention has been called. In four of them, the taxpayer prevailed and in two he lost.

In Weld v. Nichols, 9 F.2d 977, decided in the Massachusetts District Court, the plaintiff was a resident active annual member of the Brookline Country Club. He paid regular annual dues of $125, elected to play golf and paid the additional fee of $7.50 for that privilege for six months. On this fee of $7.50, a tax of 75 cents was assessed. The assessment was declared invalid and the Court said:

"It seems clear that in clause (b) the words in question [dues or membership fees] must refer to definite obligations incidental to membership in the club. Presumably the same expression is used in the same sense throughout the section. If so, the words 'dues or membership fees,' in clause (a), were meant to cover only fixed and definite charges applicable to all members of each particular class of membership. This seems to me to be the underlying intention of the section."

When the controversy in the Weld case arose, the definition of the term "dues" as including "any assessment irrespective of the purpose for which made" appearing in clause (d) of the statute had not been enacted. This I deem of no great consequence because I do not regard the payments for a license to use a golf course as the payment of an assessment and because also

of the decision in Baltimore Country Club v. United States, D.C., 7 F.Supp. 607, to which I shall refer in its chronological order.

In Foran v. McLaughlin, Collector, 59 F. 2d 158, 159, decided by the Circuit Court of Appeals, Ninth Circuit, in 1932, the taxpayer was defeated. In that case the plaintiff sought to recover a 10% tax exacted upon certain payments to the Olympic Club. These payments amounting to $52 were in addition to the regular monthly dues of $6 as an active resident member. The Court said:

"The question presented * * * is whether these monthly 'green fees' were or were not 'dues' within the meaning of section 801 of the Revenue Act of 1921. Admittedly daily green fees are not taxable. Therefore the only question * * * is whether such 'green fees,' when paid monthly as fixed and recurring obligations that carried with them rigid contractual liability, lost their character as casual green fees and became 'dues.'"

The Court then set forth certain evidence and said:

"The foregoing excerpts from the minutes clearly indicate that, by whatever name these class A memberships were called, they entailed upon their holders a fixed contractual liability to pay monthly green fees, regardless of their desire to continue to use the greens. * * * [They] represented a *recurring contractual* obligation, extending over an indefinite period of time, and, in the language of the Weld Case, supra, 'incidental' to a 'particular class of membership.'"

The facts found in this case, where judgment was against the taxpayer, are so utterly different from the facts in the cases at bar that it is here of importance only for its recognition of the doctrine of the Weld case.

In Baltimore Country Club v. United States, D.C., 7 F.Supp. 607, 608, Judge Coleman approved and followed the Weld case and distinguished his from the Foran case "because there the court was dealing with monthly green fees paid by every one of a special class of club members, which represented recurring contractual obligations extending over an indefinite period of time, that is, as long as the members of that class held their membership." The Baltimore Country Club case decides in substance that annual golf fees exacted only from those members of the Country Club

who desired the privilege of playing golf are not taxable as club "dues or membership fees." This was so held notwithstanding clause (d) of Section 413 of the Revenue Act of 1928, which declares that the term "dues" includes any assessment irrespective of the purpose for which made.

In Williamson v. United States, 12 F. Supp. 26, 29, the District Court for the Western District of North Carolina held that semiannual charges for use of the golf course to members to the Charlotte Country Club who paid a separate initiation fee and annual dues were not taxable as club "dues or membership fees." Following the Weld and the Baltimore Country Club case, Judge Webb says of the Foran case: "The case of Foran v. McLaughlin [9 Cir.], 59 F.2d 158, relied upon by the government, does not seem to be on all fours with the case at bar, because there a special class A membership had been created and all members of 'Class A' were required to pay a monthly greens fee of $4 as long as they remained Class A members, whether they desired to play golf or not."

Two additional cases have been brought to my attention, both decided by Judge Kirkpatrick in the District Court for the Eastern District of Pennsylvania. Neither is at war with the Weld case. In Hardt v. McLaughlin, 25 F.Supp. 684, 685, Judge Kirkpatrick upon the facts there presented held charges paid by members of the Merion Cricket Club for playing golf taxable as club "dues or membership fees." In Philadelphia Cricket Club v. United States, 30 F.Supp. 141, decided March 17, 1939, he concluded upon different facts that charges paid for golf privileges were not so taxable. In the latter case the Court pointed out three differences between the Philadelphia Club and the Merion Club, and said in substance:

At the Merion Club, the general membership could use the course only upon payment of daily green fees. At Philadelphia any member could pay the annual golf fees and have full use of the club course for the current year. At Merion, the obligation to pay annual golf charges was binding for the full year for which it was undertaken, and it was recurring, that is, unless before the end of the year, the club was notified that the member did not want privileges for the following year, he would be deemed to have assumed a binding obligation to pay for them. At the Philadelphia Club, it appeared that if the obligation was assumed for a year, it could be reduced to six months, and it was not recurring. At Merion, the legal characteristics of the obligations to pay the golf charges were exactly the same as that to pay the general club dues. At Philadelphia, they were quite different.

I find nothing in the foregoing cases or elsewhere indicating that the charges for golf and tennis privileges involved in the cases at bar constituted club "dues or membership fees." Where, as heretofore found, the holders of golf and tennis privileges constituted no class of membership, where the golf and tennis privileges involved were optional and could be acquired informally, where having been acquired there was no recurring obligation to take or pay for them in a succeeding year, and where no formal action was required for their surrender during the year, the charges for such privileges can not be regarded as taxable club "dues or membership fees."

The taxes exacted were without statutory authority and upon the foregoing "Findings of Fact" the plaintiff is entitled to judgment for the respective amounts heretofore found to have been paid and interest thereon.

Such judgments may be entered.

NOTE: The foregoing is intended as a compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In view of that portion of the rule providing that "requests for findings [of fact] are not necessary for purposes of review," it is probably unnecessary to pass upon such requests. It may be conducive to clarity, however, if I add here that I have intended to, and if permissible under the Rules do now grant in substance the plaintiff's requests for Findings of Fact, and the defendants' requests for Findings numbered I to VI and VIII to XIII inclusive. The defendants' requests for Findings numbered XIV to XVII have in effect been denied in that portion of the foregoing decision entitled "Findings of Fact," as was VII which is inconsistent with the by-laws. See Article IX, supra. The plaintiff's requests for Rulings of Law need no comment and the defendants' four requests for "Conclusions of Law" and motion for judgment are denied.