## PENDENNIS CLUB v. UNITED STATES.
### No. 1920.

District Court, W. D. Kentucky.
Oct. 1, 1937.

Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Donald J. Marran, Sp. Assts. to Atty. Gen., and Bunk Gardner, U. S. Atty., and Eli H. Brown, III, Asst. U. S. Atty., both of Louisville, Ky.

HAMILTON, District Judge.

This is an action instituted by the plaintiff, Pendennis Club, against the defendant, United States of America, seeking to recover from it $5,063.94, taxes claimed to have been overpaid, with interest there-

on, assessed against the plaintiff under the provisions of section 413(a), Revenue Act 1928, c. 852, 45 Stat. 791, 864, 26 U.S. C.A. § 950 (amending section 501, Revenue Act 1926, c. 27, 44 Stat. 92).

The plaintiff is a nonprofit corporation without capital stock, organized under the laws of the commonwealth of Kentucky, pursuant to the provisions of sections 879 and 883 Carroll's Kentucky Statutes, 1930 Edition, and engaged in the business of operating a social club.

Under its articles of incorporation, the board of directors, elected by the members of the club, was its governing body, with power to classify the members as to initiation fees and dues, and to prescribe by-laws, to make and enforce necessary rules and regulations, including the right to fix and enforce fines, penalties, forfeitures, suspension and expulsion of members, provided, however, as to expulsion and suspension, the affected member had the right to an appeal from the decision of the board of directors to the club membership.

The articles of incorporation were amended in 1927, conferring additional powers on the board of directors.

The by-laws provided for initiation fees as follows:

"C. Initiation Fees—1. Schedule—Until changed by the Board of Directors, the following schedule shall prevail:

a. Resident:
 i. Senior Active ......... $200.00
 ii. Junior Active ......... 100.00
 iii. Associate:
  Widows .......... None
  Others ........... 100.00
 iv. Military-Clerical ...... None
b. Non-Resident ............. 50.00"

The by-laws provided for dues, as follows:

"D. Dues—1. Schedule—Until changed by the Board of Directors, the following schedule of Dues shall prevail:

a. Resident:
 i. Senior Active ......... $150.00
 ii. Junior Active ......... 75.00
 iii. Associate:
  Widows .......... 75.00
  Others ........... 75.00
 iv. Military ................ 150.00
  Clerical ................ 75.00
b. Non-Resident .............. 25.00"

In November, 1930, the club was heavily indebted for the cost of a new building

760

and its furnishings, and at a meeting of the board of directors on November 12, 1930, the following resolution was adopted: "It is resolved by the Board of Directors of Pendennis Club, that, in view of the general conditions existing and the financial condition and necessities of the Club, it is wise that each Certificate of Interest be assessed the sum of $150.00 to be paid in 12 quarterly installments over a period of three years. Payments of only such installments as may be necessary will be called for. This resolution is to be submitted ·as a recommendation."

On November 24, 1930, at a called meeting of the club, the action of the board of directors in levying the assessment was approved. Shortly after this meeting, a letter was mailed by the club to the holders of certificates of interest, advising them of the assessment and requesting the payment of at least $12.50, as a first installment, January 1, 1931, but leaving it to the discretion of the member as to whether more than $12.50 should be paid at that time.

During January, 1931, 13 members paid the assessment in full, with $15 added for federal taxes, 611 members paid less than the full assessment, and 66 members paid no part of it. On January 31, 1933, the further collection of the assessment was abandoned, and the members who had paid in full were credited with $50.42, which represented a refund of the assessment of $45.84 and $4.58 estimated tax thereon. None of the 66 nonpaying members were required to pay the assessment or were expelled or penalized by the club.

The club collected from its members $50,857.30, which was included in its return, and voluntarily paid the tax thereon within the time provided under the law, and now seeks to recover it on the ground that the sums paid were voluntary contributions· and cannot be classified as either assessments or dues.

The statute levying the tax measures it by dues or membership fees, and defines "dues" to include any assessment irrespective of the purpose for which made, and "initiation fees" to include any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness, or share ·of stock, and irrespective of the person or organization to whom paid, contributed, or loaned.

■ In order for any transaction to be taxable, it must fall within the letter of the statute, and when this occurs the tax is its sequence without the benefit of equitable consideration. The spirit of the statute will not support a tax unless the transaction is one clearly and certainly within its provisions.

■ Clubs are associations of peculiar nature, their members perpetually changing. One of the distinguishing features is that no member, as such, becomes liable to pay into the funds of the society, or to any one else on its account, a greater sum than required by its rules to remain a member. This fundamental condition, not usually expressed in its charter or by-laws, but understood, is of such degree as to arise to the dignity of judicial notice.

■ In interpreting the statute here involved, it is safe to assume that the Congress, in selecting club dues or assessments as a source of revenue, intended that the act levying the tax should be construed in the light of general knowledge as to how clubs maintain their existence by receiving dues and levying assessments on their members.

The act is composed entirely of words and phrases of common meaning. There is nothing in its language from which it could be inferred that contributions or assessments voluntarily paid should be taxed. Subsection D expressly limits its provisions to payments made to the club as conditions precedent to membership.

■■ The general rule is that a payment is not regarded as compulsory unless made to relieve the person from a legally enforceable demand by the party to whom the money is due, and, unless the payment here sought to be taxed was to prevent the loss of membership, or some other privilege, it would not be within the language of the act.

■ The authority of an incorporated club to levy assessments on its members must be found in the statute of the state under which it is created or in its charter. This authority cannot be implied, but must be specific, and long-continued corporate action and acquiescence therein by the members in levying and collecting assessments cannot operate as giving such power, under a practical construction of the charter. Duluth Club v. McDonald, 74 Minn. 254, 76 N.W. 1128. 73 Am.St.Rep. 344;

Thompson v. Wyandanch Club, 70 Misc. 299, 127 N.Y.S. 195.

■ There was no statutory authority under the laws of the commonwealth of Kentucky which authorized the board of directors of the plaintiff, or a majority of its membership, to levy an assessment on its members. The charter of the club conferred on the board of directors the power to fix initiation fees and dues, but there is neither a direct nor incidental power given the directors or majority of its members to levy assessments.

In 1927, the plaintiff planned to build the club at a new location, and, in order to raise additional funds therefor, amended its articles of incorporation and provided that its board of directors, as trustees, should have the right to promulgate regulations and conditions through its by-laws for the election of not exceeding 800 active members, with nonassignable, nonvoting certificates of interest in all of its assets.

It was provided, however, certificates of ownership were to be issued only to active members, and that upon the death, resignation, transfer to nonresidents, forfeiture or expulsion of any such member, he, or his personal representative, could list his certificate of interest with the board of directors, which could be sold at book value as fixed by the board to the next elected member of the club. Pursuant to the amended charter, the board of directors promulgated a by-law which provided for an assessment of $250 on each member in order to obtain a certificate of interest in the assets of the club, which were valued at the time this assessment was made, and it was assumed from that valuation that, after the payment of the $250, the member had a certificate of interest worth $1,000, and, under the practice of the club, the retiring member, or if dead, his estate, received from the new member $1,000. Each member of the club who failed to pay the $250 assessment was suspended.

The defendant contends this prior assessment was similar to the one here in question and is conclusive evidence that the later one is a valid exercise of power by the board of directors, ratified by the members in meeting assembled.

The two assessments are unlike in every particular. Under the prior assessment the member acquired a qualified ownership in the assets of the club, which he did not have before, and was expelled for nonpayment. The amended articles of incorporation granted to the board of directors the power to convey this interest to the member, which was done. After the interest was once acquired and paid for, the member could not again be compelled to pay in part for it.

The same principle applies here as to a stockholder in a corporation who has fully paid for his stock, where no assessment could be made without statutory charter authority.

In the case of Garden City Golf Club v. Corwin (C.C.A.2) 62 F.(2d) 246, 248, the board of governors of the club, in order to obtain funds for permanent improvements, invited its members to submit to an assessment. All but 15 consented in writing. The court, in deciding that the payments by members were not subject to the tax, stressed the fact that the constitution and by-laws of the club did not authorize an assessment of the members and that no coercive action was taken against them for nonpayment, and said:

"Unless the legislative intent is clear, gifts are not taxable as assessments. The purpose of the amended section, preventing the evasion of collecting dues under the guise of assessments, necessarily refers to lawful assessments. By this Congress means that obligatory payments like dues and lawful assessments are to be taxed. But invited assessments or contributions, the collection of which the club has no legal right to pursue, are not assessments within the act. The title of section 413 of the Revenue Act of 1928 (45 Stat. 864) refers to 'Club Dues Tax,' which, together with the Senate and House reports on the provision as amended, gives force to the argument that by the use of the word 'assessment' the amended section was intended to include all payments made in place of dues; that is, all obligatory payments.

"These contributions made by members did not constitute an assessment in the statutory sense of an obligatory payment. There was no legal right in the appellant to require payment of such as an assessment."

The facts in this case are not similar to the one here for decision, but the principle on which it was decided is clearly applicable.

■ The Congress has the power to tax contributions to social clubs, but has not exercised it, and courts should not, by

judicial interpretation, extend the provisions of taxing statutes beyond their plain terms. To do so would invade the province of the legislative branch.

Judgment will be for the plaintiff.