**BOOTS AND SADDLES, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. A. No. 25572.

United States District Court
E. D. Michigan, S. D.

June 30, 1967.

W. Ralph Musgrove and David P. Ruwart, of Raymond, Chirco, Fletcher, Donaldson & Ruwart, Detroit, Mich., for plaintiff.

Lawrence Gubow, U. S. Dist. Atty., and Milton Trumbauer, Jr., Asst. U. S. Dist. Atty., Detroit, Mich., and Steven Cochran, David A. Wilson, Jr., and A. C. Murphy, of U. S. Dept. of Justice, Washington, D. C., for defendant.

FINDINGS OF FACTS
AND
CONCLUSIONS OF LAW

MACHROWICZ, District Judge.

This is a suit brought by Boots and Saddles, Inc., a Michigan non-profit corporation, on behalf of its members

for the recovery of federal excise taxes assessed on monthly board payments for its members' horses lodged in stables maintained by plaintiff, for the period from January 1, 1958 through December 31, 1960.

The issues raised by the pleadings and proofs are:

1. Whether "monthly board" charges paid in advance by members to a club, which entitle them to use the club's privileges and facilities for a period in excess of six (6) days, are subject to the excise tax on dues imposed by Sec. 4241 of the Internal Revenue Code of 1954, and

2. Whether twenty-five percent (25%) of the monthly payments should be excluded from the tax base because allegedly expended by the club for food for the horses being boarded.

It was the position of the plaintiff that these payments were for horse feed and exclusive use of a stall, paid in addition to an annual assessment; that they were computed and billed monthly on the basis of a charge for the occasion of actual use only, and are not subject to the excise tax imposed by Sec. 4241 of the Internal Revenue Code of 1954.

The case was tried before the Court without a jury. The Court finds from the evidence the facts to be as follows:

The plaintiff was a club within the meaning of Sec. 4241(a) of the Internal Revenue Code of 1954. Its physical property consists of a rented stable, containing thirty-six (36) horse stalls, a riding ring, tack-room and kitchen-dining room. The rental lease with Ford Motor Company, owners of the property, also gave the club members the privilege of riding over farm-roads of the farm on which the barn is located.

The tack-room contained tables, chairs and a library consisting of magazines devoted to horses. It was used occasionally for "horse movies" and occasional parties and social events were arranged

for members, including horse shows and "breakfast rides".

Applicants were required to attend at least two (2) meetings to determine their fitness for membership. They were required to own a horse and to board it. After certifying in their application that they have read and agree to be governed by the Articles and By-Laws of the Club, they were accepted for a six-month probationary period, after which they were voted in at a meeting of general membership. There was only one class of membership.

Each member was assessed Twenty-five Dollars, ($25.00) per year, in addition to which he was required to deposit Forty Dollars, ($40.00) per horse for monthly board in advance, and pay thereafter a board bill amounting to Forty Dollars ($40.00) per month. Revenue from these board payments constituted eighty-six percent (86%) of the Club's total receipts in 1958, and eighty-one percent (81%) in 1959. Payment of the board bill also gave the member the right to use all of the club facilities at any time he wished.

All the club documents, including the Articles of Incorporation, referred to these payments as a "monthly board". The By-laws provided that "there shall be no fractional refunds".

Only about two percent (2%) or eighteen (18) of the board payments out of the eight hundred sixty (860) board payments during the period here in issue were other than a flat amount. These were in a few instances when the member joined or resigned during mid-month or when he removed or brought in an extra horse or temporarily removed his horse and received an adjustment.

With only these rare exceptions however, the regular charge was on a flat monthly basis and several member witnesses testified that they were unaware of any daily rate. Whether a month had twenty-eight (28), thirty (30), or thirty-one (31) days, the rate was always the same.

 The Court finds from the evidence that the board payments were charges for social and athletic privileges and facilities for a period of more than six (6) days, within the meaning of Sec. 4242(a) of the 1954 Code which reads as follows:

"As used in this part the term 'dues' includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six (6) days."

 This Court further finds that these board bills were dues which were required to be paid, since the by-laws provided that a member would be "suspended" or expelled and denied all privileges of the club for non-payment of board bill." (Art. I, Sec. 10(b) (1)). In Boyden v. United States, D.C., 218 F.Supp. 220, it was held that a restaurant deposit required to be paid by a member falls squarely within the concept of dues.

 The argument used in plaintiff's insistence that the Court utilize a non-statutory definition of "dues", giving Sec. 4242 a meaning completely different from a logical reading of the word, was rejected by the Supreme Court in Malat v. Riddell, 383 U.S. 569, 571–572, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102, where the Court said:

"As we have often said, 'the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.' * * * Departure from a literal reading of statutory language may, on occasion, be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose. * * * But this is not such an occasion."

Neither is the present instance such an occasion, since the statute was enacted to clarify and broaden its previous provision, Knoll Golf Club v. United States, D.C., 179 F.Supp. 377 and is to be read according to its plain meaning.

 The further claim of the plaintiff that even if the Court finds that the board payments constitute taxable dues, the tax base should be reduced by twenty-five percent (25%) for food for members' horses, is equally untenable. The statute imposes a tax on "*any* amount paid" and does not provide for any reduction of the tax base for any reason. Since the statute provides that the whole charge should be considered dues regardless of how it is used by the club, to hold otherwise would amount to providing an exclusion which was not provided by Congress.

It is therefore the finding of this Court that the entire "monthly board" charges paid by the plaintiff club's members constituted dues subject to excise tax imposed by Sec. 4241 of the Internal Revenue Code of 1954.

An order may therefore be entered in accordance with this finding, for the dismissal of the plaintiff's complaint with prejudice and with costs to the defendant.