**FONTAINEBLEAU HOTEL CORP., a Florida corporation, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

United States District Court
S. D. Florida.
Jan. 23, 1968.

Lewis M. Kanner, of Williams, Salomon & Kenney, Miami, Fla., for plaintiff.

Mitchell Rogovin, Myron C. Baum, and Russel L. Davis, Justice Department, Washington, D. C., and by William A. Meadows, Jr., U. S. Atty., and Robert L. Steuer, Asst. U. S. Atty., Miami, Fla., for defendant.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

MEHRTENS, District Judge.

The Court, having considered the pleadings, memoranda, and stipulations filed in this cause and having heard argument of counsel, enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The plaintiff is a Florida corporation and maintains its principal place of business in Miami Beach, Dade County, Florida. It operates and did operate at all times material to this matter Fontainebleau Hotel, a resort hotel located in Miami Beach, Florida.

2. Westview Country Club (hereinafter referred to as Westview) is a social, athletic and sporting club whose facilities are available only to its members. Such facilities consist of an eighteen-hole golf course, a dining room, snack bar, swimming pool, tennis courts, cocktail lounge, game room, "pro" shop, and other similar facilities usually furnished to members by a country club.

3. On April 22, 1957, plaintiff and Westview entered into an agreement with the plaintiff which states in part as follows:

> 2) The basic purpose and intent of the agreement between the Hotels *, of the one part, and Westview, of the other part, is that Westview should create a new class of membership which might be characterized, for clerical convenience, as "the Hotel membership"; that such class of membership would authorize and be limited to two (2) hotel memberships; that Americana should be and will be one such hotel member and that Fontainebleau should be and will be the other of such hotel members; * * *.

4. The agreement further provided that Westview and the hotels agreed that Westview would promptly amend its charter and its by-laws in order to "effectuate such new class of hotel membership and to limit the maximum membership of Westview." The Westview corporate charter was thereafter amended on April 24, 1959, to read in part as follows:

> The members of this Club shall be divided into Owner-Members and such

---

* The agreement also included the Americana Hotel; which is not involved in these proceedings.

other members as may be prescribed by the By-Laws. * * *

5. On April 26, 1959, Westview adopted "By-Laws" which provided as follows:

## ARTICLE III

### Membership

Section I. Classification of Membership

(A) The members of the Club shall be classified as (1) Regular, (2) Social, (3) Junior, (4) Intermediate, (5) Special, (6) Non-Resident Social and (7) Temporary.

* * * * * *

Section 10. Temporary Members

* * * * * *

(B) Hotel Memberships, not to exceed two in number, shall be deemed to be included under this section. The contract designating such a membership shall be deemed to have the same force and effect as if it were set forth verbatim in these By-Laws.

6. The agreement further provided that hotel members would be entitled to the following privileges:

(d) That each hotel will have the privilege of sending thirty-four (34) designees of each hotel each day to play the Westview golf course; but this limitation is made with the understanding that if on any day lack of congestion on the golf course and starting times permit, as many other designees of the hotels in excess of 34 each as the Westview course can handle will similarly be permitted to play the Westview golf course; and

(e) The designees of the hotels will, as aforesaid, have the privilege of playing the Westview golf course and will be accorded by the Club the same treatment and the same privileges as all of the other members of Westview, excepting only that the designees of the hotels will not be entitled (as are the other members of Westview) to participate in the Westview social functions, nor would they be entitled to utilize the facilities of Westview for their own social functions; * * *

7. In consideration for the hotel membership, each hotel was required to pay $7,500 for an initiation fee plus $1,500 representing the 20% excise tax due on the initiation fee. Further, each hotel was required to purchase debentures issued by Westview in the face amount of $66,000.

8. In addition to the above initial payments, each hotel member was required to pay to Westview an "annual guaranteed greens fee" in the amount of $24,000 on January 1st of each year in advance for the year commencing on that day. This "annual guaranteed greens fee" was a minimum and entitled the plaintiff to 3,350 rounds of golf per year. If plaintiff wished to recoup any of these fees from the designees (persons who played under its membership), it could do so; however, if more than 3,350 rounds of golf were played, Westview would be entitled to $5.00 per round whether paid by the plaintiff or its designees. Since the annual guaranteed greens fee was a minimum amount, Westview was entitled to the full $24,000 regardless of whether anyone ever used the golf course.

During the years involved, plaintiff has paid to Westview $24,000 per year, the minimum guaranteed greens fee, plus the following additional amounts for designees playing golf in excess of 3,350 rounds:

| | |
|---|---|
| 1961 | $ 2,660 |
| 1962 | 4,650 |
| 1963 | 6,955 |
| 1964 | 12,466 |
| 1965 | 22,751 |

9. As a further part of the hotel membership agreement, each hotel membership was to carry with it one individual membership. The individual was to be designated by the hotel and was also to be a member of the Board of Directors of Westview. The person so designated by the Fontainebleau was Ben Novack.

10. Neither the plaintiff nor Westview paid excise taxes on the $24,000 annual fees nor were excise tax returns ever filed. On May 27, 1966, a delegate of the Secretary of the Treasury made

a timely assessment for excise taxes against plaintiff in the amount of $17,-919.90 ($14,400 tax and $3,519.90 interest) for the period January 1, 1961 to March 25, 1963. A delegate of the Secretary of the Treasury made another assessment against the plaintiff for the period January 23, 1964 through March 26, 1965, in the amount of $10,884.72 ($9,600 tax and $1,284.72 interest). Both assessments were satisfied in full on June 23, 1966, and January 19, 1967, respectively. Claims for refund were thereafter timely filed and were disallowed by the Internal Revenue Service. This action was thereafter instituted.

11. On December 6, 1966, the National Office, Internal Revenue Service addressed a memorandum to the District Director, Jacksonville, Florida, proposing the revocation of Westview's tax-exempt status as a non-profit club on the ground that the plaintiff, being a corporation, could not be a member of a social club and that the income from the arrangement with the plaintiff constituted nonmember income.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter pursuant to Title 28 United States Code, Section 1346(a).

2. Plaintiff was a member of Westview during the relevant periods of time involved herein and may be subject to the provisions of Section 4241(a) (1) of the Internal Revenue Code of 1954 notwithstanding the fact that it is a corporation rather than a natural person. It is the opinion of this Court that Section 4241(a) (1) was intended to apply to corporations such as the plaintiff which are treated as members by a social club and which receive privileges and benefits from such club that can be enjoyed by natural persons.

3. It is irrelevant that the plaintiff may not be an "active resident annual member" of Westview. Section 4241(a) (1) provides for the assessment of a tax upon dues paid by *any* member of a social club once it has been determined that *any other member* is an active resident annual member whose dues are in excess of $10 per year.

4. The defendant is not estopped from asserting that the plaintiff is a member of Westview within the meaning of Section 4241(a) (1) of the Internal Revenue Code of 1954. The plaintiff cannot claim estoppel since it cannot show that it relied on representations made by the Internal Revenue Service. Moreover, assuming that the positions taken by the Internal Revenue Service are inconsistent, the doctrine of equitable estoppel is no bar to the correction by the Commissioner of an alleged mistake of law. Automobile Club of Mich. v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

5. The $24,000 annual guaranteed payments by plaintiff to Westview were required as a condition of the continued right or privilege to use the facilities of the Club and constituted "dues" as defined in Section 4242(a) of the Internal Revenue Code of 1954. The requisite that contributions to a social club must be made without insistence upon equivalence between the amounts paid and amount of benefits received in order to be validly considered as membership dues has been met in the present case. There is no equivalence since the $24,000 annual payments had to be made whether or not the guests or designees of the plaintiff ever availed themselves of the use of the Club. See White v. Winchester Country Club, 315 U.S. 32, 62 S.Ct. 425, 86 L.Ed. 619 (1942); Cohen v. United States, 381 F.2d 383 (Ct.Cl.1967); Boyden v. United States, 218 F.Supp. 220 (D.Mass.1963); Boots and Saddles, Inc. v. United States, 269 F.Supp. 274 (E.D. Mich.1967).

6. The $24,000 annual payments by plaintiff to Westview are taxable under Section 4241(a) (1) of the Internal Revenue Code of 1954, which imposes a tax equivalent to 20% of any amount paid as dues or membership fees to any social, athletic or sporting club or organization.

7. Defendant is entitled to judgment dismissing plaintiff's complaint with prejudice and is hereby directed to submit a Final Judgment to this Court consistent with these findings and conclusions.