**FREEPORT COUNTRY CLUB, Plaintiff-Appellant,**

**v.**

**The UNITED STATES of America, Defendant-Appellee.**

**No. 17805.**

United States Court of Appeals, Seventh Circuit.

July 9, 1970.

---

Hamilton T. Hoyt, Milwaukee, Wis., for plaintiff-appellant; Shea, Hoyt, Greene, Randall & Meissner, Milwaukee, Wis., of counsel.

William A. Friedlander, Atty., Tax Division, Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Leonard J. Henzke, Jr., Attys., Dept. of Justice, Washington, D. C., Thomas A. Foran, U. S. Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS and KERNER, Circuit Judges, and GRANT, District Judge.*

GRANT, District Judge.

This is an appeal from a District Court's order sustaining defendant's motion for summary judgment, denying plaintiff's motion for summary judgment and dismissing the complaint. The question presented by this appeal is whether the amount (up to $10) actually spent for food at the Freeport Country Club (herein referred to as the Club), under a plan in which the Club required its members to spend at least $10 per month in the Club cafe or be assessed for the difference between the $10 and the amount spent in the Club cafe, constitute "dues" within the meaning of § 4242(a) and thus subject to the tax imposed by § 4241(a) (1) of the Internal Revenue Code of 1954.[1]

The Freeport Country Club is a non-stock, non-profit Illinois corporation, entirely owned by its members, which operates a private golf course, tennis courts, swimming pool and clubhouse in Freeport, Illinois.

At an annual members' meeting on April 11, 1962, the Club members voted to establish a minimum spending program whereby each member was expected to spend at least $10 in the Club cafe each month. If the member failed to spend that amount, he would automatically be assessed for the difference between $10 and the amount he did spend that month, plus 20% excise tax payable thereon.

Beginning on May 1, 1962, the Club charged those of its members, who spent less than $10 per month in the Club cafe, the amount by which their respective expenditures fell short of $10 plus excise tax. The Club bookkeeper made such charges in the regular course of billing. Certain discretionary exceptions, however, were made in individual cases. In the event a Club member planned to be absent from Freeport during an entire month or more and made a written request in advance to the Club, an officer of the Club might authorize the bookkeeper not to bill that particular member for the month of his absence.

On November 20, 1962, the Board of Directors of the Club adopted the following resolution:

Resolved that whereas the regular dues assessed against the various classes of membership of the Freeport Country Club are predicated in part upon the assumption that substantial operating revenue will be realized from the participation of adult members in the club functions and activities and the use of the club facilities, supplementary dues may be charged to all classes of members, except Juniors and Associates as follows: In the discretion of the Board of Directors a supplementary dues charge may be made against any member other than a Junior or Associate who shall not have spent at least $10.00 in any preceding month in the cafe, said supplemental dues charge shall not be greater than the difference between the

* Chief Judge Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. 26 U.S.C. §§ 4241 and 4242 have since been repealed effective 1966 and there has been no excise tax on dues since that date. Pub.L. 89–44, Title III, § 301, June 21, 1965, 79 Stat. 145.

member's cafe expenditure for the month and said sum of $10.00 together with the dues tax thereon payable to the Federal Government. It is expressly understood that no member shall be required to spend any given amount in the cafe, bar or other facility as a condition to the continued enjoyment of the privileges and facilities of the club and of membership therein. Should the Board of Directors elect to make any such assessments of supplemental dues, they shall be made only for the preceding month's differentials and shall not be cumulative and shall be considered an obligation for the month of the differential used.

The supplemental dues program went into effect on December 1, 1962, and each month thereafter (except October, 1963) the Board of Directors, by motion, specifically applied the foregoing resolution to the next succeeding month. No member was ever asked to resign, was ever dropped from membership in the Club, or was ever denied any of the privileges of the Club for the reason that he had not spent as much as $10 in any certain month.

On December 7, 1962, the Board of Directors adopted the following resolution:

Whereas, a Resolution has been adopted by the Board of Directors, authorizing the Directors to make a supplemental dues charge against members spending less than $10.00 in the cafe for a month.

Now, Therefore, Be It Resolved that the Excise Tax on such supplementary dues as may be collected be promptly remitted to the Collector of Internal Revenue, and further, that collections be made from all members of $2.00 a month less any amount collected for tax on supplementary dues, which collections shall be set aside in a separate bank account pending a determination to be made at the request of the Board of Directors of the Director of Internal Revenue for a ruling upon the Excise Tax consequences of said

Resolution concerning supplementary dues referred to above and, further, that the President of the Freeport Country Club request such a ruling from the Director of Internal Revenue.

From December 7, 1962, until December 31, 1965, when the excise tax on club dues was repealed, all taxes of supplemental dues levied by the Club were promptly collected and paid to the Internal Revenue Service, and the provisional taxes on amounts spent each month in the Club cafe up to $10 were collected and deposited in a separate bank account.

The Club bookkeeper billed all members under the 11 April 1962 resolution from May 1, 1962, to November 30, 1962, and under the 20 November 1962 resolution from December 1, 1962, to the present time as a matter of regular practice, except when an officer or director issued instructions that the bookkeeper should not bill a certain member for one or more months because of his inability to use the Club facilities for reasons of absence or illness. Toward the end of each month it was not uncommon for Club members to call the bookkeeper to inquire as to the amount they had already spent in the Club cafe that month.

On October 7th and November 11th, 1966, the Government assessed against the Club excise tax totaling $16,109.29 plus interest for the years 1963, 1964 and 1965. On June 6, 1967, the Internal Revenue Service received payment of $534.70 from the Club against the two assessments. This sum was the amount of taxes paid under protest by 249 members of the Club during December, 1965. The Club filed a claim for refund of the $534.70 on June 8, 1967. The Internal Revenue Service formally rejected the claim on February 12, 1968.

On January 18, 1968, the Club filed a complaint for refund of the $534.70 in the United States District Court for the Northern District of Illinois, Western Division. The Government filed on April 29, 1968, an amended answer and counterclaim for excise taxes in the

amount of $16,109.29 plus interest of $1,713.16.

On June 26, 1968, the Club filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. On December 12, 1968, the Government filed its cross motion for summary judgment. The District Court filed its minute order sustaining the Government's summary judgment cross motion, denying the Club's motion for summary judgment and dismissing the complaint on April 3, 1969.

The excise tax in question is imposed by § 4241(a) (1) [2] with the term "dues" defined in § 4242(a) [3] of the Internal Revenue Code of 1954. Plaintiff taxpayer does not contest the applicability of the excise tax on the amount assessed by the Club for the difference between the $10 and the amount spent in the Club cafe. Plaintiff only contests the excise tax on the amount up to $10 spent each month by each member in the Club cafe. The federal excise tax imposed on dues paid to any social, athletic, or sporting club or organization is not an innovation. Section 501 of the Revenue Act of 1926, as amended by § 413 of the Revenue Act of 1928, provided for an excise tax on dues and defined "dues" as any assessment, irrespective of the purpose for which it was made. Section 1712(a) of the Internal Revenue Code of 1939, amended by § 543(b) of the Revenue Act of 1941, while continuing a federal excise tax on dues, substantially changed the earlier wording of the statute to read that the term "dues" included any assessment, irrespective of the purpose for which it was made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days. The codification of § 4242(a) of the Internal Revenue Code of 1954 continued the definition of "'dues" as it was used in the 1939 Code as amended. The all-inclusive nature of the dues tax statute is reflected in § 49.4242–1 of the Treasury Regulations on Facilities and Services Excise Tax.[4]

2. Sec. 4241(a) (1) of the I.R.C. of 1954:
   (a) *Rate.* There is hereby imposed—
   (a) *Dues or Membership Fees.* A tax equivalent to 20 per cent of any amount paid as dues or membership fees to any social, athletic or sporting club or organization, if the dues or fees of an active resident and new member are in excess of $10.00 per year.

3. Sec. 4242(a) of I.R.C. of 1954:
   *Dues.* As used in this part the term "dues" includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days.

4. Treasury Regulations Sec. 49.4242–1:
   Sec. 49.4242–1. *Definition; dues or membership fees* (a) *In general.* The term "dues" or "membership fees" as used in the regulations in this part, means all charges made by a social, athletic, or sporting club or organization which are commonly understood to constitute dues or membership fees, as well as all other charges required to be paid to such a club or organization for the privilege of being a member of the club or organization or a member of a particular membership class. The term also includes—
   (1) Any assessment made by a social, athletic, or sporting club or organization, irrespective of the purpose for which made, and
   (2) All charges made by a social, athletic, or sporting club or organization for (i) social privileges or facilities for any period of more than 6 days (whether or not consecutive), or (ii) golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities for any period of more than 6 days (whether or not consecutive). In determining whether a charge by such a club or organization constitutes dues or membership fees within the meaning of subparagraph (2) of this paragraph, the test is whether payment of the charge confers the right to use a social, athletic, or sporting privilege or facility of the club or organization for the prescribed period. It is immaterial whether the privilege or facility is one for which a charge is mandatory, even though the member chooses not to avail himself of the privilege or facility, or whether the privilege or facility is one for which a charge is made only if the member, at his own election, chooses to have the privilege or facility made available to him.

The recognized starting point in determining whether certain payments made to a club are taxable as dues is the leading case of White v. Winchester Country Club, 315 U.S. 32, 62 S.Ct. 425, 86 L.Ed. 619 (1941), where the Supreme Court in holding payments subject to the dues tax said at page 41, 62 S.Ct. p. 430:

> Consideration of the nature of club activity is a necessary preliminary to the formulation of a test of what constitutes a "due or membership fee." So far as finances go, the fundamental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives. Thus, on the one hand, payment of the price of an individual dinner at the club dining room or a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a "due or membership fee" if the payment is not fixed by each occasion of actual use.

Though the Winchester case dealt with dues as it was defined in § 501 of the Revenue Act of 1926, as amended by § 413 of the Revenue Act of 1928, as seen above, the definition of dues has been broadened, not narrowed, by later amendment. Consequently, the Winchester case is ample authority for the test of what constitutes dues.

Both plaintiff and defendant cite Winchester as authority. It is plaintiff's contention that a purchase in which a member receives an equivalent for his money and in which payment for use of the common club facility is determined by each occasion of actual use is not dues; rather that dues connotes a fixed payment for repeated and general use of common club facilities regardless of how often such facilities are used. Plaintiff says the nature of the club activity for which the payents are made is persuasive. Plaintiff reads Winchester correctly in this respect for the "each occasion v. repeated use" dichotomy has been reiterated in numerous decisions as a test in determining whether a payment is dues. Merion Cricket Club v. United States, 315 U.S. 42, 62 S.Ct. 430, 86 L.Ed. 656 (1941); Cohen v. United States, 381 F.2d 383, 180 Ct.Cl. 647 (1967); Porter v. United States, 303 F.2d 67 (5th Cir., 1962); Hawaii Yacht Club v. United States, 301 F.Supp. 1150 (D. Hawaii, 1969); Fontainebleau Hotel Corp. v. United States, 284 F.Supp. 494 (S.D. Fla., 1968); Boyden v. United States, 218 F.Supp. 220 (D.Mass., 1963); Gould v. United States, 187 F.Supp. 337 (D. Colo., 1960); and Knoll Golf Club v. United States, 179 F.Supp. 377 (D.N.J., 1959). But plaintiff in applying this dichotomy misinterprets the facts at hand. The mere fact that food is received in exchange for the amount of money up to $10 that is spent by a member in the Club cafe each month is not determinative of the issue at hand.

■■ The name or classification of the payment to a club is not controlling, United States v. Anderson, 108 F.2d 475 (7th Cir., 1939); Jonathan Club v. United States, 220 F.Supp. 704 (S.D.Calif., 1963), rather the substantial nature of the payment is controlling, Boyden v. United States, supra, and the purpose of the payment should be viewed as a whole to determine if it is dues, Gearhart v. United States, 269 F.Supp. 309 (E.D. Va., 1967). In the case at bar, each

Any privilege or facility offered by a social, athletic, or sporting club or organization which is so directly related to a social, athletic, or sporting activity in which the club is engaged, or for which it was created, as to partake of the nature of the activity itself is considered to be a

social, athletic, or sporting privilege or facility. This is true even though such privilege or facility, if considered entirely apart from any social, athletic, or sporting activity, would not in and of itself constitute a social, athletic, or sporting privilege or facility.

member of the Club was required to pay $10 per month for Club privileges, no matter how much he used the Club cafe. Use of the Club cafe was merely one way to satisfy all or part of the $10 per month requirement—a payment for repeated and general use of common club facilities. The payment up to $10 per month for the price of food in the Club cafe was not fixed by each occasion of actual use since the $10 had to be paid even if food was not bought. The mere fact that the $10 payment *could* be satisfied through the purchase of food in the Club cafe does not affect the true nature of the payment.

Our holding is supported by the weight of authority in the few reported cases dealing with payments of minimum restaurant charges as dues under § 4242(a) and thus subject to the tax imposed by § 4241(a) (1) of the Internal Revenue Code of 1954. In the case of Boyden v. United States, *supra,* it was held that a non-refundable restaurant deposit of $50 required of club members as a condition of continued membership covering a stated period and not necessarily in proportion to use of the restaurant constituted dues. The court said at page 222, of 218 F.Supp.: "The deposit is a payment required as a condition of continued membership, as a device for imposing on each member a minimum contribution as his share of the operating expense of maintaining a club activity. There was no necessary equivalence between the payment and the benefit received, since this payment had to be made whether or not the member ever availed himself of the use of the club restaurant." Such is the case at bar. The payment of $10 had to be made by each member even if the member did not use the Club cafe.

In Cohen v. United States, *supra,* the Woodmont Country Club by-laws imposed a monthly charge on each of its members determined by reference to his spending for food and drink at the club the previous month in accordance with a sliding schedule. The schedule provided for a monthly charge of $20 if he had spent nothing the previous month; a charge of $17.50 if he had spent $5 or less, a charge of $12.50 for spending between $5 and $10, a charge of $7.50 for spending between $10 and $15, and no charge if he spent $20 or more. The Court of Claims held, not that the first $20 spent by a member each month constituted taxable dues, but that the stipulated monthly charge of $17.51 constituted dues. The court found the $17.51 payments not equated to the use of the club facilities; rather they were payments which had to be made whether or not the members ever used the club's dining and bar facilities. The court found the taxable figure to be $17.51 rather than $20 because a member could spend one cent on food and drink and thus only be assessed for $17.50 per the sliding schedule—a total figure of $17.51, this being the very least amount of money a member could spend and keep his membership. Plaintiff attempts to distinguish *Cohen* by saying it involves a different type of minimum spending plan. It is plaintiff's contention that only if $20 was spent could an assessment be escaped in *Cohen.* Thus, says plaintiff, if anything less than $20 was spent, under the sliding schedule the member would be assessed for some remaining amount. So plaintiff says, the Court of Claims, by choosing $17.51 as the taxable amount, was necessarily taxing some actual assessment as distinguished from obligatory spending (one cent being obligatory spending and $17.50 being an actual assessment by the club). Plaintiff contends the case at bar is different. In the case at bar, says plaintiff, the $10 minimum spending amount contains no assessment because if that full amount is spent the member escapes an assessment for the month. We find this distinction of plaintiff's unavailing for it presupposes a spending of the full $10 by a member in the case at bar for there to be no assessment. Such is not always the case. A member of the Club may spend less than $10 in the Club cafe and thus be assessed for the difference between the

$10 and the amount spent in the Club cafe just as in *Cohen*. But even presuming the full $10 amount might be spent by each member each month, thereby avoiding any assessment, the $17.51 in the *Cohen* minimum payment plan would be the equivalent of the $10 in the case at bar for dues tax purposes since both are the minimum amount a member must spend for the privilege of being a member of the club. Plaintiff's attempt at distinguishing *Cohen* by alleging it involves a different type of minimum spending plan must fail.

Of special note is Example 1 of § 49.-4242–1(c), Treasury Regulations on Facilities and Services Excise Tax, *supra*, which states:

> Example (1). A social club operates a restaurant and bar for the use of its members. The club requires of each member a minimum expenditure during the year of $200 for food or drink. If a member does not make actual expenditures totaling $200, he is billed for an additional amount equal to the difference between his actual expenditures and $200. This charge of $200 constitutes dues or membership fees, inasmuch as such charge must be made for the privilege of being a member of the club.

It is plaintiff's contention that the Example is in error and that the Commissioner of Internal Revenue is attempting to tax not only actual assessments but money spent for food under the *threat* of an assessment. Plaintiff misinterprets the Example. He believes that any of the $200 spent for food and drink is not a charge for the privilege of being a member but rather is only a standard of annual expenditures that is *expected* of each member to help support the club restaurant and bar. In view of the language of Boyden v. United States, *supra*, Cohen v. United States, *supra*, and the broadening of the definition of "dues" in the Revenue Act of 1941 as continued in § 4242(a), we believe the $200 in Example 1 is properly a charge for the privilege of being a member whether the money is expended for food

and drink or paid as actual assessments. Example 1 is on point and is persuasive authority, Gearhart v. United States, *supra*, if not in conflict with the statute it interprets, Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920). Since the regulation is not an unreasonable interpretation of the statute, it must be sustained. Cohen v. United States, *supra*.

Plaintiff places heavy emphasis on the case of Buerger v. United States, 244 F. Supp. 1 (W.D.Pa., 1965). In that case, the taxpayer was subject to a club resolution which established a $20 minimum on purchases for food and beverages. If, at the end of each month any member had not made purchases of $20 or more from the dining room or bar, a charge representing the difference between what he had spent and $20 was imposed upon such member. The payment of this $20 monthly minimum was a condition of membership. The plaintiff in that case always made purchases in excess of the $20 and was never billed for any differential amount. The court held, in effect, that to subject these payments to the dues tax would be to tax a mere threat of an assessment and, accordingly, held them not taxable.

*Buerger* is in direct conflict with the cases of Boyden v. United States, *supra*, Cohen v. United States, *supra*, and Example 1 of Treasury Regulation § 49.-4242–1(c), *supra*. The holding in *Buerger* was specifically treated and disposed of in *Cohen*. We find *Boyden, Cohen,* and Example 1 of Treasury Regulation § 49.4242–1(c) persuasive authority and thereby reject the holding in *Buerger* as not consistent with the weight of authority.

■ Plaintiff further places reliance upon an administrative settlement by the Commissioner of Internal Revenue with the Ozaukee Country Club (herein referred to as Ozaukee) regarding a minimum dues plan similar to the one in the case at bar. On October 13, 1959, the Commissioner gave a private ruling to Ozaukee that their supplemental dues

program did not amount to a required minimum expenditure and thus was not subject to the dues tax. But on January 9, 1961, the Commissioner wrote to Ozaukee referring to his private ruling of October 13, 1959, and stating that upon further consideration he found that Ozaukee's minimum dues program did constitute a mandatory minimum charge as a requisite to continued membership and that therefore amounts spent for food and drink up to $20 were subject to the dues tax and that the October 13, 1959, ruling "is hereby revoked."

Pursuant to the January 9, 1961, ruling Ozaukee collected from each of its members the 20% dues tax on amounts up to $20 spent for food and drink at the club during the month of April, 1961, and paid the total thereof plus interest to the Internal Revenue Service and filed a claim for refund thereon. When this was denied, Ozaukee commenced an action for refund against the Government. After the Government had answered the complaint, Ozaukee filed a motion for summary judgment. The Government did not file a brief in opposition thereto but instead sent Ozaukee's attorney a letter stating that there had been approved an administrative settlement paying to Ozaukee the full amount of its claim for refund plus interest thereon.

It is plaintiff's contention that by means of this administrative settlement, the Government completely capitulated and, in effect, conceded that money spent for food and drink under the Ozaukee plan was not subject to the dues tax. With this we cannot agree. Plaintiff cites no authority nor are we able to find any that such an administrative settlement acts as any type of authoritative holding. We do not treat it as such.

Plaintiff attempts to distinguish Boyden v. United States, *supra*, because in that case the minimum payment was payable *in advance* rather than after the end of a billing period. Accordingly, says plaintiff, an actual assessment was involved in that case rather than a mere threat of an assessment as in the case at bar. We find such a distinction unavailing in view of the facts in the case at bar. Here, even though the Club's resolution of November 20, 1962, authorized the Board of Directors to make assessments for the preceding month's differentials, the board in fact by motion each month specifically applied the 20 November 1962 resolution to the next *succeeding* month. Thus there is more than a mere threat of assessment in the case at bar. At the beginning of each month the Club members were aware that, in addition to the amounts denominated as dues, each would be billed for an additional amount of $10 which they would be required to pay as a condition of membership.

This necessarily leads us to another contention put forth by the plaintiff taxpayer. He says that in the case at bar, the minimum dues program is a *discretionary* program, thereby distinguishing it from those cases which find dues to be a condition to membership. It is plaintiff's contention that under the minimum dues program in the case at bar the assessment for not spending the $10 is not automatic but merely discretionary. Accordingly, says plaintiff, the spending of up to $10 in the Club cafe each month is discretionary and is not a condition to membership in the Club, thereby making it immune from the dues tax. Plaintiff cites in part from the 20 November 1962 resolution of the Club Board of Directors in support thereof:

It is expressly understood that no member shall be required to spend any given amount in the cafe, bar or other facility as a condition to the continuous enjoyment of the privileges and facilities of the club and membership therein.

As pointed out above, the minimum dues plan in the case at bar is more than a mere threat of assessment. The $10 required of each member each month is not a voluntary or discretionary payment which would take it out of the

dues tax, City Athletic Club v. United States, 242 F.2d 43 (2nd Cir., 1957); Garden City Golf Club v. Corwin, 62 F. 2d 246 (2nd Cir., 1932); Pendennis Club v. United States, 20 F.Supp. 758 (W.D. Ky., 1937), but rather is in essence a condition of retaining membership. Whether or not an excise tax is imposed in any case depends upon its own peculiar facts, "The Benedicts" v. United States, 234 F.Supp. 1 (W.D.N.C., 1964); Fleming v. Reinecke, 52 F.2d 449 (7th Cir., 1931). The facts in the case at bar show that even though various members were not assessed for certain months because they were out of the city for over a month or were ill, all "members were at least under a moral or social compulsion to make the payments." "The Benedicts" v. United States, *supra*. The Club bookkeeper in fact billed all members, with the exceptions noted, in the regular course of billing.

A payment is not deemed voluntary or discretionary merely by denominating it such. Rather the purpose of the call for payments, the method by which the collection of such payments is enforced, and the nature of the response to the payments must all be taken into consideration to determine the true nature of the payments. City Athletic Club v. United States, *supra*. For even though moral or social compulsion to make the payments may be involved, "The remarkably fine response * * * is a good example of how effective such *sanctions* can be. Taxwise, no distinction need be made between payment under such sanctions and payment under legal sanctions." City Athletic Club v. United States, *supra*.

For the reasons stated above we find that the plan of the Freeport Country Club whereby each member (excluding Juniors and Associates) was required to spend at least $10 per month in the Club cafe or be assessed for the difference between $10 and the amount actually spent in the Club cafe was a fixed payment for repeated and general use of common club facilities. The payments were not mere threats of assessments but based upon the facts in this case, they were obligatory and actual assessments. Consequently the amount of money (up to $10) spent by each member in the Club cafe each month to satisfy the minimum dues plan are dues under § 4242(a) and thus subject to the excise tax imposed by § 4241(a) (1) of the Internal Revenue Code of 1954.

The judgment is affirmed.